Evening Journal Association v. State Board of Assessors.

STATE, THE EVENING JOURNAL ASSOCIATION, PROSE-
CUTOR, v. THE STATE BOARD OF ASSESSORS ET AL.

STATE, THE JERSEY CITY PRINTING COMPANY, PROSE-
CUTOR, v. THE SAME.

1. The tax law of April 18th, 1884, (*Pamph. L., p.* 234,) imposes a tax
on certain corporations by way of a license for exercising corporate
franchises, but the tax is laid with respect to the capital stock of such
corporations and for the privilege of doing business in this state. In
the construction of this statute, the business in which the capital of the
corporation is invested, and not the objects for which the company was
formed as expressed in its certificate of incorporation, must be re-
garded.

2. The interpretation of words in their popular sense, rather than accord-
ing to their scientific meaning, is peculiarly required in the construc-
tion of tax laws in which the legislature adopts classifications for pur-
poses of taxation, determined by the legislative conception of the
policy of subjecting certain persons, property, occupations or business
to taxation, according to popular notions or ideas of the propriety of
such taxation.

3. A company incorporated for the purpose of carrying on the business
of printing and publishing a daily newspaper and general jobbing,
printing and publishing, whose capital is wholly employed in publish-
ing a newspaper for circulation, is not a manufacturing company within
the meaning of the exemption in the fourth section of the act of 1884.
But a company incorporated "to conduct and prosecute the business
of book printing, and job printing, engraving, electrotyping and litho-
graphing," whose capital is invested in the prosecution of that busi-
ness, and which manufactures on orders only, is a manufacturing com-
pany within the meaning of that section.

On *certiorari.* In matter of taxation.

Argued at November Term, 1884, before Justices DEPUE
and SCUDDER.

For the prosecutors, *Gilbert Collins.*

*Contra, John P. Stockton,* Attorney-General.

The opinion of the court was delivered by

DEPUE, J. By an act passed April 18th, 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations, and for the collection thereof," provision was made for the imposition of an annual tax for the use of the state, by way of a license for corporate franchises, upon certain enumerated companies doing business in this state. By the fourth section of this act a tax in the shape of a yearly license fee was laid upon certain companies, such as telegraph, telephone, cable and express companies, gas and electric light companies, oil or pipe-line companies, insurance companies, and parlor, palace or sleeping-car companies, graduated either by the gross amount of receipts, or premiums or surplus returned or ascertained, or dividends earned and declared, specifically provided for in this section. In the same section it was further enacted that all other corporations, incorporated under the laws of this state and not thereinbefore provided for, should pay a yearly license fee or tax of one-tenth of one per cent. on the amount of the capital stock of such corporation, with a proviso that the act should not apply to railway, canal or banking corporations, or to savings banks, cemeteries or religious corporations, or purely charitable or educational associations, or manufacturing companies or mining companies carrying on business in this state. *Pamph. L.* 1884, *p.* 234.

The prosecutors are not corporations of the class specially mentioned in this section. They are taxable as corporations incorporated under the laws of this state, not specially mentioned in the act unless they are within the exemption in the proviso as being " manufacturing companies."

The companies who are prosecutors in these suits were incorporated by certificates filed under the general corporation law. The certificate of incorporation, which the Corporation act requires to express the objects for which the company was formed, is not decisive upon the question now before the court. It is true that the act of 1884 imposes the tax by way of a license for exercising corporate franchises, but the tax is laid

with respect to the capital stock of such corporations and for the privilege of doing business in this state, and in the classification of corporations in the statute, with a view of taxation or exemption from taxation, the business to which the capital of a corporation is applied must be regarded.

The certificate filed by the Evening Journal Association states the object for which the company was formed to be " to carry on the business of printing and publishing, in Jersey City, the daily newspaper called the ' Evening Journal,' and general jobbing, printing and publishing." Since March, 1884, the company has limited its business entirely to printing and publishing the said newspaper. The whole capital of the company was employed, when this tax was laid, in the publishing of the newspaper, and in determining whether it is a manufacturing company within the exemption of the fourth section of the act, the business prosecuted by the company and in which its capital is invested is to be considered.

Lexicographers define "manufacture" to be " the process of making anything by art, or reducing materials into a form fit for use, by the hand or by machinery." *Worcester's Dict., tit.* "*Manufacture.*" Mr. Brande defines "manufacture" as a term employed to designate the changes or modifications made by art or industry in the form or substance of material articles in the view of rendering them capable of satisfying some want or desire of man; and manufacturing industry to consist in the application of art, science or labor to bring about certain changes or modifications of already existing materials. He includes under the term " manufacture" all branches of industry with the exceptions of fishing, hunting, mining and such industries as have for their object to obtain possession of material products in the state in which they are fashioned by nature. He says that the term is generally applied only to those departments of industry in which the raw material is fashioned into desirable articles by art or labor without the aid of the soil, but that there is no real good reason for such limitation, and that it is obvious from the slightest consideration that agriculture is nothing but a manufacture, for the

business of the agriculturist is so to dispose of the soil, seed, manure or other materials, that they may supply him with other and more desirable products. *Brande's Encyclopædia, tit. "Manufacture."*

The etymological or scientific meaning of words is useful in the construction of statutes, and sometimes is decisive. A gas company is a manufacturing company. *Nassau Gaslight Co.* v. *City of Brooklyn*, 89 *N. Y.* 409. An aqueduct company is not a manufacturing company. *Dudley* v. *Jamaica Pond Aqueduct Co.*, 100 *Mass.* 183. Nor is a mining company. *Byers* v. *Franklin Coal Co.*, 106 *Mass.* 131. The reason for this distinction is apparent. Illuminating gas is an artificial and not a natural product, produced by the modification of natural substances by art and industry. A company engaged in producing gas is a manufacturing company in its strictest sense. A water company or a mining company manufactures nothing. Such a company applies labor and machinery simply in obtaining and making merchandise of natural products without any change of substance. Its business has none of the qualities of a manufacturing business.

But the technical or scientific meaning of words does not always control in the construction of statutes. The cardinal rule in the construction of legislative acts is that words in common use are to be taken in their ordinary signification. In *Parker* v. *Great Western R. R. Co.*, 6 *E. & B.* 77, the charter of a railway company which authorized the company to charge a certain rate "for all cotton and other wools, drugs and manufactured articles," was under consideration. The court held that the term "manufactured articles" must be understood in its popular sense; that it did not mean all articles produced from the raw state by manual skill and labor, but those articles only which are made in what are, in popular language, called manufactories. To call a farmer, who cultivates his land and reaps and markets his crops, a manufacturer—as he is in the scientific signification of the term—would do violence to language in the construction of a statute, and yet the owner who cuts down the trees which are

the growth of his land, and prepares from them lumber for sale in the market, and engages in it as a business, is, in a popular sense, and therefore in a legal sense, a manufacturer. Such a person was held to be a manufacturer within the meaning of the Bankrupt act. *In re Chandler*, 1 *Lowell's Dec.* 478.

The interpretation of words in their popular sense rather than according to their scientific meaning is peculiarly required in the construction of tax laws, in the enactment of which the legislature must needs adopt a classification of persons and property for purposes of taxation—a classification determined by the legislative conception of the policy of subjecting certain persons, property, occupations or business to taxation according to popular notions or ideas of the propriety of such taxation. In the construction of such laws the courts will incline strongly towards the popular signification of language. In that way the legislative intent is most apt to be reached.

Two cases in the federal courts will throw light on the subject under consideration. The federal court in the Territory of Utah, in 1872, decided that the publishers of a daily newspaper, who also conducted, in connection therewith, a book and job printing-office, in which were manufactured cards, notes, bill-heads, blank-books, posters, show-bills, &c., were manufacturers within the meaning of the Bankrupt act. *In re Kenyon & Fenton*, 6 *Nat. Bank. Reg.* 238. In a later case, decided in 1877, the Supreme Court of the District of Columbia decided that the publisher of a weekly newspaper was not a manufacturer within the meaning of the Bankrupt act. *In re Capital Publishing Co.*, 18 *Nat. Bank. Reg.* 319.

In the last case referred to, In re Kenyon & Fenton was cited and commented on. It was there observed that in the earlier case the decision was placed upon the ground that the bankrupts were manufacturers of books, bill-heads, &c., and it was declared that in that respect they were undoubtedly manufacturers within the meaning of the act. This observation was well founded, and all that was necessary to the decision of the territorial court was that the parties were in fact

engaged in some business which made their transactions amenable to the bankrupt law.    The rest of the opinion was *obiter dictum*, and was disapproved.

. We agree with the reasoning and with the conclusion of the court in In re Capital Publishing Co. that the publisher of a newspaper is not, in a legal sense, a manufacturer.    It is true that in the production of his papers, which he sells, he employs manual labor and mechanical skill.    But so does the sculptor who produces, as the result of his handiwork and genius, the statue; so does the painter who executes his painting with his palette and his brush; so does the lawyer who prepares his brief, or the author who writes a book.    But neither the sculptor nor the painter is classified as a manufacturer by reason of his works; nor would the lawyer or the author be regarded as a manufacturer though they employed a printer—the former to print his brief, and the latter his book. In the ordinary and general use of the word "manufacturer," the publishing of a newspaper does not come within the popular meaning of the term.    As was said by the court in the case last cited, "no definition of the word 'manufacturer' has ever included the publisher of a newspaper, and the common understanding of mankind excludes it.    *    *    *    It gives employment to printing-presses, types and editors, and yet, in the whole history of newspapers from the close of the seventeenth century, this word 'manufacturer' has never been applied to them or appropriated by them in the whole range of English literature.    No author has ever so used it, and it is never so applied by any statute or any authority except by way of opinion in the solitary case from Utah."

A newspaper has intrinsically no value above that of the unprinted sheet.    Indeed, it has less value, considered intrinsically, as a mere article of merchandise.    Its value to its subscribers arises from the information it contains, and its profit to the publisher is derived, in a great measure, from the advertising patronage it obtains by reason of the circulation of the paper induced by the enterprise and ability with which it is conducted.    Neither in the nature of things nor in the ordi-

nary signification of language, would a newspaper be called a manufactured article or its publisher a manufacturer.

We think that the Evening Journal Association is not a manufacturing company within the meaning of the proviso in question, and that the tax in question was properly assessed upon it.

The certificate of the Jersey City Printing Company, the prosecutor in the other case, states the object for which it was incorporated to be " to conduct and prosecute the business of book printing and job printing, engraving, electrotyping and lithographing." The depositions show that this company has, since its organization, been engaged in the business for which it was incorporated. Its capital was invested in the prosecution of that business when this tax was laid. The return to the board of assessors states that the principal line of articles manufactured by the company consists of pamphlets, text-books, and all descriptions of printed matter, including chromos and illustrated cards, and that the company manufactures only upon orders.

Both the cases cited from the federal courts agree that a person engaged in such a business is a manufacturer in a legal sense; and in *Seeley* v. *Gwillim,* 40 *Conn.* 106, it was held that a person who carried on the business of a book-binder and making blank-books was a manufacturer. In this view we concur. A person who is engaged in such a business would be appropriately denominated a manufacturer in the popular sense of that term, and he would fall within that designation in its scientific sense, for by his skill and labor he adds to the intrinsic value of the materials used, which gives them a merchantable value in the market as merchandise.

We think that the Jersey City Printing Company is a manufacturing company within the exemption contained in the proviso. The assessment against this company must be set aside.