PEOPLE ex rel. STOKES CO. *v.* ROBERTS.  533

Hun.]      Third Department, December Term, 1895.

The People of the State of New York ex rel. Frederick A. Stokes Company, Relator, *v.* James A. Roberts, Comptroller of the State of New York, Respondent.

*Corporation — tax on its business or franchise — a corporation is not wholly engaged in manufacturing books when dealing in foreign books — the percentage of capital so employed is immaterial — time when the Comptroller may settle an account — his decision as to valuation is controlling.*

Where a corporation, organized under chapter 40 of the Laws of 1848, for the purpose of printing, publishing and selling books, has authority to do any and all business appertaining to a general book-selling business, and, pursuant to such authority, annually uses a portion of its capital in the purchase and sale of foreign books, it is not a corporation "wholly engaged" in carrying on a manufacturing business, and it is, therefore, subject to a tax upon its franchise or business under chapter 542 of the Laws 1880 and the acts amendatory thereof.

The fact that the principal business of such a corporation is printing, publishing and selling books, and that only a small part of its capital was used in the purchase of foreign books, does not render it less liable to the tax.

The Comptroller has the right to settle an account for such taxes against a corporation after the fifteenth day of January in the year when the tax becomes due and payable.

His determination upon the question of the valuation of the capital stock of a corporation for the purposes of such taxation must stand unless it is clearly shown to have been erroneous.

Herrick, J., dissenting.

Certiorari issued out of the Supreme Court, and attested on the 13th day of April, 1895, directed to James A. Roberts, Comptroller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular the proceedings had in regard to the revision and readjustment of the account theretofore settled by him on the capital stock assessed against the relator, together with all papers submitted by the relator and filed with him and any examination under oath or otherwise of said relator, or of any person on his behalf.

*James W. Eaton,* for the relator.

*T. E. Hancock, Attorney-General (G. D. B. Hasbrouck, Deputy Attorney-General),* for the respondent.

534   PEOPLE ex rel. STOKES CO. *v.* ROBERTS.

THIRD DEPARTMENT, DECEMBER TERM, 1895.          [Vol. 90.

PUTNAM, J.:

Relator was incorporated in April, 1890, under the provisions of an act of the Legislature passed on the 17th day of February, 1848, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes" by making and filing the certificates required by the statute. The certificate stated the objects for which the company was formed as follows, viz.: "To carry on the business of printing, publishing and selling books, pamphlets, pictures, engravings, photographs and prints of all kinds, and newspapers; manufacturing, buying and selling stationery and stationery articles, writing materials, objects of art and ornaments of all kinds, and to do any and all business connected with or appertaining to a general printing, publishing and book-selling business."

It will be seen that relator, by its charter, was not only authorized to carry on the business of printing, publishing and selling books, pamphlets, pictures, engravings and photographs, but also was empowered to buy and sell stationery and other articles, and to do any and all business connected with or appertaining to the printing, publishing and book-selling business.

The evidence shows that the principal business actually carried on by relator since its incorporation has been the publishing, printing and selling of books. It has been held that a corporation engaged in such a business is a manufacturer. (*Evening Journal Assn.* v. *State Board of Assessors*, 47 N. J. L. 36-42.)

Assuming the doctrine stated in the case cited to be correct, relator since its incorporation has been engaged in carrying on a manufacturing business. And it was such, although in printing and publishing books relator employed contractors to perform portions of the work. The testimony of the witness Foster shows that although the relator contracted with other parties to do the printing, binding and other portions of the work on the books it published, yet that much of the work necessary to produce and manufacture such books was done by relator or its employees. We think the evidence of the witness named shows that the books published by relator were in fact manufactured by it, and hence should be inclined to believe, if it appeared that the printing, publishing and selling of books was the only business relator had been engaged in since its

incorporation, that it was not liable for the tax imposed on it under the provisions of chapter 542 of the Laws of 1880 and the acts amendatory thereof.

But under the provisions of that act relator is liable to taxation on its franchise or business unless wholly engaged in carrying on a manufacturing business. It appears that outside of its business of printing, publishing and selling books, relator each year since its incorporation has been engaged in buying and selling foreign books, and has invested in that business yearly the sum of $11,000.

It is impossible, therefore, to say that during the years for which the Comptroller imposed a tax on relator under the provisions of the act of 1880 it was wholly engaged in the business of manufacturing. As it appears that during the period mentioned, it also used a portion of its capital for the purchase and sale of foreign books, it was, therefore, liable to the tax imposed upon it. (*People ex rel. Tiffany* v. *Campbell et al.*, 144 N. Y. 166.)

The fact that relator's principal business was printing, publishing and selling books, and that only a small part of its capital was used in the purchase of foreign books, does not render it less liable for the tax. In the *Tiffany* case the capital of relator was $3,000,000, and the yearly amount expended in the purchase of goods not manufactured by the corporation was only $300,000. In this case the capital of the corporation is $105,000, and the amount expended each year in the purchase of books not manufactured by the company was $11,000.

In the opinion of ANDREWS, J., in the *Tiffany* case, it is not suggested that Tiffany & Co. were exempted from taxation under the act of 1880, except for that part of its capital employed in buying and selling goods, on the ground that the amount used in that way was inconsiderable as compared with the amount of its capital. He places such exemption of the corporation on the ground that the purchase and sale of the goods was not within its corporate powers, and says: " The statute was not aimed at, and did not contemplate, the exercise by a corporation of powers *ultra vires*. If a manufacturing corporation is engaged in business outside of its corporate powers, in connection with its manufacturing business, it does not cease to be ' wholly engaged ' in the business of manufacture ; that is to say, its only legal and authorized business was that of manu-

facture.    It subjected itself to taxation upon that portion of its capital so used, but, nevertheless, it remained a corporation, which, so far as it exercised its legal powers, was ' wholly engaged ' in manufacture, and, therefore, entitled to exemption as to its manufacturing business."

In the case under consideration the purchase and sale of books was within the corporate powers of the company.    The business it did during the years in question of manufacturing, as well as of buying and selling foreign books, was authorized by its charter. Hence it was not, during said years, wholly engaged in the manufacturing business, and the Comptroller did not err in imposing the tax of which relator complains.    (*People ex rel. Western Electric Co.* v. *Campbell,* 145 N. Y. 587.)

It is claimed that the Comptroller had no right to settle an account for taxes after the fifteenth day of January in the year when such tax became due and payable.    It is sufficient to say in regard to this position that the same claim was made in the *Tiffany* case (see points of appellant, 144 N. Y. 168), and necessarily overruled by the decision in that case.    (See, also, *People ex rel. Western Electric Co.* v. *Campbell,* 145 N. Y. 587.)

In the case last cited, BARTLETT, J., in his opinion, says that "it is the established rule, settled by repeated adjudications of this court, that the determination of the Comptroller must stand upon the question of valuation unless clearly shown to have been erroneous." Under the rule so stated we think relator did not show error on the part of the Comptroller in the valuation made of its capital stock.

The determination of the Comptroller should be confirmed and the certiorari quashed. with fifty dollars costs and disbursements.

