**ADVERTISER PUBLISHING COMPANY,**
Limited, Appellant,

v.

**Earl W. FASE, Tax Commissioner and
Tax Collector, Appellee.**

No. 16523.

United States Court of Appeals
Ninth Circuit.

June 14, 1960.

Rehearing Denied July 20, 1960.

Milton Cades, Harold S. Wright, Smith, Wild, Beebe & Cades, Honolulu, Hawaii, for appellant.

Shiro Kashiwa, Atty. Gen., Nobuki Kamida, Deputy Atty. Gen., for appellee.

Before POPE, HAMLIN and KOELSCH, Circuit Judges.

HAMLIN, Circuit Judge.

Advertiser Publishing Company, Limited, appellant, instituted this action in the Circuit Court of the First Judicial Circuit of the Territory of Hawaii against appellee, the Tax Commissioner and Tax Collector of the Territory of Hawaii, to recover Territorial taxes which had been paid by appellant under protest. The tax years in question are 1952 and 1953. The Circuit Court rendered a decision in favor of appellant. This decision was reversed by the Supreme Court of the Territory of Hawaii and judgment entered in favor of appellee. Jurisdiction in the trial court was based on §§ 1575 and 9647 of the Revised Laws of Hawaii 1945, as amended. Jurisdiction of the Supreme Court of the Territory of Hawaii was based on § 214-4 of the Revised Laws of Hawaii 1955. This Court has jurisdiction of the appeal from the decision of the Supreme Court of the Territory of Hawaii under 28 U.S.C.A. §§ 1293 and 1294.[1]

The case involves construction and application of § 5455 of the General Excise Tax Law of the Territory of Hawaii, Chapter 101, Revised Laws of Hawaii 1945, as amended.[2]

Section 5455 imposes a privilege tax against persons "on account of their business and other activities in this Territory measured by the application of rates against values, gross proceeds of sales or gross income, as the case may be," and lists a number of broad business categories such as "manufacturers," "contractors," "service business," "professions," and "other business." The "other business" category is a catch-all provision which applies to "any business, trade, activity, occupation, or calling not included" in any of the specific categories listed. In 1952 and 1953, the tax years in question here, all persons and corporations engaged in business were taxed at the rate of 2½%, except for "manufacturers," which were taxed at 1½%, and certain other classifications not relevant here.

Appellant has contended all along, and the Territorial Court admitted, for the purposes of this case, that appellant is engaged in the single, integrated business of preparing, printing and circulating a daily and Sunday newspaper. The newspaper carries display advertising, local classified advertising, legal advertising and political advertising. For the

1. The judgment of the Supreme Court of the Territory of Hawaii was entered on March 16, 1959. Appellant's right to appeal was preserved by Public Law 86-3 (86th Congress, Act of March 18, 1959) 73 Stat. 4, 48 U.S.C.A. following section 488f.

2. "Sec. 5455. *Imposition of tax.* There is hereby levied and shall be assessed and collected annually privilege taxes against the persons on account of their business and other activities in this Territory measured by the application of rates against values, gross proceeds of sales or gross income, as the case may be, as follows:

"A. *Tax on manufacturers.* (1) Upon every person engaging or continuing within this Territory in the business of manufacturing, compounding, canning, preserving, packing, milling, processing, refining or preparing for sale, profit or commercial use, either directly or through the activity of others, in whole or in part, any article or articles, substance or substances, commodity or commodities, the

amount of such tax to be equal to the value of the articles, substances or commodities, manufactured, compounded, canned, preserved, packed, milled, processed, refined or prepared, for sale, as shown by the gross proceeds derived from the sale thereof by the manufacturer or person compounding or preparing the same (except as hereinafter provided), multiplied by the respective rates as follows:

"Millers or processors of sugar, raw or refined, two and one-half per cent; canneries, two and one-half per cent; all manufacturers on whose gross income a tax is not otherwise levied in this chapter, one and one-half per cent.

"(2) The measure of the tax on manufacturers is the value of the entire product, manufactured, compounded, canned, preserved, packed, milled, processed, refined or prepared, in this Territory, for sale, profit or commercial use, regardless of the place of sale or the fact that deliveries may be made to points outside the Territory. * * *"

years 1952 and 1953 appellant filed returns showing its advertising revenues taxable at the 1½% rate applicable to "manufacturers." Appellee assessed an additional tax on the ground that appellant's advertising revenues were taxable at the 2½% rate under either the "service business" or "other business" category. Appellant paid the amounts assessed under protest and brought this action to recover them.

If appellant's advertising revenues are not taxable at the 1½% rate applicable to "manufacturers," appellant must pay the 2½% rate applicable to a "service business" or "other business."

The Territorial Court rejected appellant's contention that the advertising revenues were taxable at the 1½% rate applicable to manufacturers and held that the revenues were taxable under the "other business" category at the 2½% rate. In reaching this conclusion the Court accepted appellant's contention that it is engaged in the "single, integrated business" of publishing a newspaper, but stated that the publisher of a newspaper is not a manufacturer.[3]

█ It has been long established and often reiterated that this Court will respect the rulings of the Supreme Court of the Territory of Hawaii on questions of local law, except in cases of manifest error. Waialua Agricultural Co. v. Christian, 1938, 305 U.S. 91, 109, 59 S. Ct. 21, 83 L.Ed. 60; Pae v. Stevens, 9 Cir., 1958, 256 F.2d 208; Carey v. Hilo Finance & Thrift Co., 9 Cir., 1948, 170 F.2d 236; Meyer v. Territory of Hawaii, 9 Cir., 1947, 164 F.2d 845.

█ We are unable to say the conclusion of the Territorial Court that appellant's advertising revenues are taxable at 2½% is manifestly erroneous.

█ Appellant presents three major points. Two are summarized in the footnote.[4] The only one we regard as pre-

3. Evening Journal Association v. State Board of Assessors, 1885, 47 N.J.L. 36; Oswald v. St. Paul Globe Publishing Co., 1895, 60 Minn. 82, 61 N.W. 902; State v. Crounse, 1921, 105 Neb. 672, 181 N.W. 562, 16 A.L.R. 533; compare State v. Dupre, 1890, 42 La.Ann. 561, 7 So. 727.

4. a. Appellant does not question the correctness of the decisions relied on by the Territorial Court (footnote 3, supra) on their facts, but argues they are of little value in this case for the reason that all but one of them were decided before 1900. Since then, countless mechanical innovations, technological advancements, and specialized services have transformed the newspaper business. Whereas at one time the intellectual and creative effort involved in the publication of a newspaper may have predominated over the mechanical aspects of the business, today the mechanical aspects have assumed such major importance that the newspaper business must now be classed as "manufacturing." Although it is undoubtedly true that the newspaper business is more complex today than formerly, and that it could reasonably be considered as a "manufacturing" enterprise, we are unable to say the Territorial Court committed manifest error either in construing the term "manufacturing" in its "ordinary" sense or in determining that under that standard a newspaper publisher is not a manufacturer.

b. The General Exercise Tax Law as passed in 1935, being Act 141 of the Session Laws, provided in subsection E for a tax on "printers and publishers." In the Session Laws of 1939 an amendatory act (Series A–42, Act 252) was passed, deleting subsection E, the provision applicable to "printers and publishers," stating the intent of the paragraph was "to render the various types of business defined in said deleted provision taxable under such other provisions of said Act 141 as may by their terms be applicable thereto."

The Territorial Court stated that—

"The report in the Senate Journal of 1939 on this amendatory Act (Standing Committee Report 164, page 710) shows conclusively that the tax on printers and publishers was not intended to be abolished nor to be included under subsection A. The report shows that the purpose of the bill is 'to *increase* the revenues of the Territory and to spread the tax base as far as possible.' In deleting subsection E there *was no intent to repeal the* tax on printers and publishers but, on the contrary, the intent was to increase the same, as the report put those under subsection E (printers and publishers) 'in the *regular income tax class, which pays now the rate of one and one-quar-*

senting any substantial question is the contention that the Territorial Court ignored key parts of the statute.

Appellant points out that the statute levies a tax of 1½% not only on every person *engaging in the business of manu*-facturing, but also upon every person engaging in the business of—

" \* \* \* compounding, canning, preserving, packing, milling, *processing*, refining or *preparing for sale*, profit or commercial use, either

*ter percent.'* \* \* \* [Emphasis in the original.]

"The tax on businesses under subsection E could not have come under A (tax on manfacturers) because, while the tax on millers and canneries was 1¼%, the tax on all other manufacturers not otherwise taxed was ¼%. The only provisions at the 1¼% rate, other than on millers and canneries, were on retailers, contractors, theaters and amusements, service business and 'other business.' The intent, then, must have been either to place printers and publishers under subsection H (tax on other business) or F (service business).

"Under either construction the rate would have been 1¼%, subsequently raised to 2½% for the tax period covered under this case." Appellant contends that in finding "conclusive" support for its construction in Standing Committee Report 164, the Territorial Court committed the manifest error of basing its construction upon a committee report which had been rejected by the Legislature.

In 1939, Senate Bill No. 256 was introduced in the Territorial Legislature to amend the General Excise Tax Law. The original draft of this Bill amended subsection E ("printers and publishers") by increasing the tax rate from 1% to 1¼%. The Committee Report on this Bill explained that the amendment repealed the 1% rate on printing and publishing and put printers and publishers "in the regular income tax class, which pays now the rate of one and one quarter percent." It is this report which the Territorial Court referred to as showing "conclusively" that printers and publishers were not intended to be included under subsection A ("Manufacturers").

The Bill passed the Senate. The House Committee on finance deleted subsection E ("printers and publishers"). After passing the House, the Bill went into conference. The Conference Committee provided for the deletion of subsection E, but added the statement that the intent of the deletion was "to render the various types of business defined in said deletion provision taxable under such other provisions of said Act 141 as may by their terms be applicable thereto."

Appellant contends the Territorial Court erred in relying on a Committee Report on a "rejected" provision as showing "conclusively that the tax on printers and publishers was not intended-to be \* \* \* included under" the subsection applicable to manufacturers. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 1940, 113 F.2d 52, 58; 50 Am. Jur. 332 (Statutes § 330).

Whether the Court regarded the language it quoted from Standing Committee Report 164 as essential to its holding that appellant's advertising revenues are not taxable under the subsection applicable to manufacturers, or as merely additional support for a conclusion already reached, is not clear beyond all doubt, but it may be noted that the Court's discussion of the Committee Report takes up one page of an opinion which extends for seventeen pages in the record, and that the Committee Report was mentioned at all only after an extended discussion of whether, independent of any legislative history, a newspaper publisher falls under subsection A ("Tax on Manufacturers").

As additional support for its conclusion the Court referred to a "rule \* \* that the court may look to the title of a statute when construing an ambiguous statute or construing an obscure passage or expression therein." The 1939 amendatory act is entitled: "An Act Relating to Taxation, Revising the General Excise Tax Law and the Unemployment Relief and Welfare Act, so as to Coordinate the Same and to *Broaden the Tax Base* and to *Provide for Increased Revenues* Therefrom, and Amending All Inconsistent Laws to Conform Thereto." [Emphasis added.]

The General Excise Tax Law as originally passed in 1935 provided for a tax of ¼% on manufacturers and 1% on printers and publishers. Appellee suggests that it seems hardly reasonable that in passing a revenue measure for the purpose of increasing revenues, the Legislature intended to reduce by 75% the tax on newspaper publishers.

While appellant's argument has some weight, the only question here is what provision of the Act is applicable to appellant's advertising revenues.

directly or through the activity of others, in whole or in part, *any article or articles, substance or substances, commodity or commodities* * * *." [Emphasis added.]

Appellant states the question presented to the Territorial Court was not simply whether printing and publishing a newspaper constitutes "manufacturing" as that word is ordinarily understood, but, rather, whether appellant's business is taxable under the statute which mentions, in addition to manufacturing, "processing * * * preparing for sale, profit or commercial use * * * any article * * * substance or * * * commodity * * *." In answering appellant's contention that the newspaper business falls within the portion of the statute quoted above, the Territorial Court said:

"There is a rule of construction embodying the words noscitur a sociis which may be freely translated as "words of a feather flock together," that is, the meaning of a word is to be judged by the company it keeps. This is really a particular rule under the general rule of interpretation that the meaning to be given to a writing is controlled by the context; taken from the context, both words and sentences may be made to mean something very different from what the authors intended."

In support of this interpretation the Court cited Suabedissen-Wittner Dairy v. Department of Treasury, 1938, 105 Ind.App. 626, 16 N.E.2d 964.

The Territorial Court has said that it is "a cardinal rule of statutory construction that the courts are bound, if possible, to give effect to all of its parts, and no sentence, clause or word shall be construed as unmeaning or surplusage if a construction can be legitimately found which will give force to and preserve all the words of the statute * * *." In re Pringle, 1915, 22 Haw. 557, 564.

Appellant suggests the Territorial Court ignored or misapplied this cardinal rule, and that under the Court's construction the words "processing" and "preparing for sale" are effectively read out of the statute. Appellant particularly urges that under the doctrine of *noscitur a sociis* the meaning of a particular word must be determined from a consideration of the entire statute, whereas the Territorial Court's solution was to determine the scope of the statute by reference to the single word "manufacturing," and that if the standard is properly applied and all parts of the statute are given effect it must be held that appellant is engaged in "processing" or "preparing for sale" a distinct article of commerce, i. e., a newspaper.

Appellant's argument has some merit, but we do not think the judgment of the Territorial Court is manifestly erroneous. The primary function of a newspaper of general circulation is to convey information and ideas. We think it was within the scope of the Territorial Court's discretion to lay emphasis on this factor and use it as a standard in construing the statute and determining an important question of local law.

As noted, appellant contends it is engaged in the "single, integrated business" of publishing a newspaper. The Territorial Court accepted this contention, at least for the purpose of the case before it, and also accepted appellant's further contention that the business should be taxed as a whole. Thus the approach of the Territorial Court was to accept the characterization of the nature of appellant's business and then determine whether the business, as characterized, fell under the subsection applicable to manufacturers.

An alternative approach would be to first consider the source of the revenue in question and determine the appropriate category for taxation on the basis of the activity which produced it.[5] Under this view it could be argued, in the case

---

5. This approach was apparently suggested as appropriate by appellee before the Territorial Court.

of a taxpayer with more than one source of revenue, either that (1) all income should be taxable under the category applicable to the prime source of income, or (2) the income from each source should be taxable under the appropriate category. Of course, cases may be imagined where serious practical difficulties might be encountered in attempting this approach. In the case of a taxpayer with many sources of revenue, for instance, it might be difficult to ascertain with any certainty the portion of the income attributable to any particular activity.

No such difficulty is encountered here. Appellant's income from each of its income-producing activities is established.

Much could be said in support of an argument that appellant's advertising revenues are taxable under the service business classification. Irrespective of this, however, it would appear that the terms of § 5455 would preclude taxing advertising revenues under the subsection applicable to manufacturers. Section 5455 levies a tax against persons on account of their business and other activities "measured by the application of rates against values, gross proceeds of sales *or* gross income, *as the case may be* * * *." [Emphasis added.] The tax levied on "service" businesses and "other" businesses, for instance, is 2½% of "gross income," whereas the tax levied on "manufacturers" is 1½% of "the value of the articles, substances or commodities, manufactured * * * preserved * * * or prepared, for sale, as shown by the *gross proceeds derived from the sale thereof* * * *." [Emphasis added.] The terms "gross income" and "gross proceeds of sale" are defined in § 5444. Gross income means

> " * * * the gross receipts, cash or accrued, of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and all receipts, actual or accrued as hereinafter provided,

by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments however designated * * *."

This broad definition may be compared with the more restricted definition of "gross proceeds of sale" as "the value actually proceeding from the sale of tangible personal property * * *."

The importance of this distinction is apparent when we look to the sources of appellant's revenues. Appellant derives income from those who advertise in its newspaper and from the buyers of the paper (retail consumers and others who buy for resale), as well as from job printing and perhaps other sources. Its advertising and circulation revenues for the years in question were as follows:

| | Advertising | Circulation |
|---|---|---|
| 1952 | $1,475,583 | $695,999 |
| 1953 | 1,614,732 | 750,210 |

It may be seen that appellant's advertising revenues were more than double its circulation revenues. The point is that the advertising revenues represent no part of the value of the newspapers "as shown by the gross proceeds derived from the sale thereof * * *," i. e., "the value actually proceeding from the sale of tangible personal property." For every dime appellant received from the sale of its paper, it received something over twenty-one cents from its advertisers. Although it is true that appellant's advertising rates and revenues are to some extent dependent on its circulation, we think it clear, under the plain terms of the statutes involved, that the advertising revenues are no part of the "Value actually proceeding from the sale of tangible personal property * * *."

While the newspaper itself may well be regarded as an "article, substance or commodity" within § 5455, and while advertising could perhaps, under a somewhat strained construction, be so considered, under no stretch of the imagination can advertising be regarded as "tangible personal property." We see no impediment to classifying advertising reve-

nues as amounts derived from a service business, but as the rate on both service businesses and other businesses is 2½%, the Territorial Court was required to decide only that appellant's advertising revenues do not come under § 5455, subd. A.

We see no manifest error in its decision.

Judgment affirmed.