**HEIDELBERG CENTRAL, INC., Respondent,**

v.

**DIRECTOR of the DEPARTMENT OF REVENUE of the State of Missouri, Appellant.**

**No. 56761.**

Supreme Court of Missouri, Division No. 2.

Feb. 22, 1972.

Jack N. Bohm, Kansas City, for respondent.

John C. Danforth, Atty. Gen., E. Thomas Coleman, Jr., Asst. Atty. Gen., Kansas City, for appellant.

HENRY I. EAGER, Special Commissioner.

In this matter the Circuit Court reversed the decision of a Hearing Officer of the Department of Revenue which assessed sales taxes allegedly due, with interest and penalties. The amount was $12,276.66. We have jurisdiction because a construction of § 144.030, RSMo 1969, V.A.M.S.,[1] a part of our Sales Tax Law, is required. The hearing was rather informal, but there is enough in the evidence and agreements to permit our review. The Circuit Court acquired jurisdiction upon a petition for review under § 536.100.

Respondent, Heidelberg Central, Inc., manufactures printing presses at its plant in Kansas City, Missouri. It sells these to printers in various parts of Missouri. The types, sizes and values vary greatly. The assessment here in question covers most of the period from April 1, 1968 to December 31, 1969. During that period Respondent billed sales taxes to its Missouri customers and collected most of them. On the transactions here in question each of the purchasers requested of Respondent a form for sales tax exemption, received it and executed it; consequently they paid no sales tax and Respondent remitted none. It is indicated that the same practice had been followed for about 17 years or more, until an audit precipitated the present assessment. As shown by exhibits (invoices and exemption certificates), sales taxes on the sales of 11 printing presses are involved here, valued at from $3,000 to $140,726 each. The evidence was that these purchasers were all commercial printers engaged in what is described as "job printing"; their products varied somewhat, but they produced, generally, business forms, stationery, printed advertising, postcards, church bulletins, calendars, etc., and the Hearing Officer so found; some of the work involved color printing. The presses were purchased either to expand existing plants or to replace existing machines because of changes in design. Respondent knew of the situation existing in the plant of each of these purchasers. Respondent did not solicit letters from customers claiming sales tax exemptions.

The ultimate question here is whether or not commercial printing of the type described is "manufacturing" within the meaning of the statute cited. In its appropriate parts it is as follows: "144.030. Exemptions. * * * 3. There are also specifically exempted from the provisions of sections 144.010 to 144.510 and 144.600 to 144.745 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.510 and 144.600 to 144.745: * * * * (3) Machinery and equipment, replacing and used for the same purposes as the machinery and equipment replaced by reason of design or product changes, which is purchased for and used directly for manufacturing or fabricating a product which is intended to be sold ultimately for final use or consumption; (4) Machinery and equipment purchased and used to establish new or to expand existing

1. All statutory references will be to that revision.

manufacturing, mining or fabricating plants in the state if such machinery is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption; * * *." 3(1) of the statute refers to tangible things which become a part of the product or are consumed in the process. We deem it inapplicable here. Our question must be decided from 3(3) and 3(4). The parties agree that our issue is as stated above. The Hearing Officer of the Department concluded from these facts that the petitioner (seeking a reassessment) had failed to prove that such printing constitutes "manufacturing" within the meaning of the statute. The Circuit Court held to the contrary, finding that such printing was "manufacturing" and reversed the decision, thus negating the assessment.

There is no controlling Missouri law. In Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W.2d 911, suit was filed to enjoin the alleged violation of building restrictions. The defendant was printing posters, display advertising and certain types of tickets in a building within the restricted area. The prohibition included any "manufacturing business" but coupled that designation with sundry specifically named and obviously objectionable businesses, such as slaughter houses, livery stables, etc. The Court said, loc. cit. 913, that "technically, it [defendant's business] is a manufacturing business, because the materials purchased and used by defendant are altered by its processes and made up into the different finished products desired." But it further held that the term was not used there in its all-inclusive sense, but was limited by the reference to any such "place of business," etc., as would be regarded as objectionable in a "first-class residence neighborhood." The injunction was denied. In a limited sense, the case is applicable.

The definitions of "manufacturing" are somewhat helpful, but very broad. In Webster's Third International Dictionary we find: "to make (as raw material) into a product suitable for use * * * * to make from raw materials by hand or by machinery * * * *." Such a meaning would encompass many things which, in ordinary parlance, we do not consider as manufacturing.

In prohibition days it was held in United States v. Brunett et al. (W.D.Mo.), 53 F.2d 219, that anyone who takes part in any of the processes involved in making liquor is engaged in the "manufacture" of intoxicating liquor. That is not helpful here. The State says that the words of a statute must be given a meaning consonant with the intent and purpose of the legislature and must also be given their plain and rational meaning. Tiger v. State Tax Commission, Mo., 277 S.W.2d 561. We need not argue with that proposition, but it does not answer our question. More specifically, the State cites: City of Lexington v. Lexington Leader Co., 193 Ky. 107, 235 S.W. 31; Lawyers' Ass'n of St. Louis v. City of St. Louis, Mo.App., 294 S.W.2d 676; Patterson v. City of New Orleans, 47 La.Ann. 275, 16 So. 815; State v. Gardner & Jacob Co., Inc., 176 La. 221, 145 So. 521; Sutherland, Statutes & Statutory Construction (3rd Ed.), Vol. III, p. 313. The Lexington case involved the claimed tax exemption of a corporation engaged solely in publishing and distributing a newspaper; the statutory exemption was applicable to the machinery and products of those actually engaged in manufacturing; the publisher used sundry machines, equipment, plates, etc. in its printing. The Court held that the test was the kind and character of the article produced and not the kind of treatment given; that the legislature obviously did not intend to adopt the broad dictionary definition, and that this taxpayer was not "engaged in manufacturing." That case seems to be in line with the general trend regarding the publication of newspapers. As some have said, the product has no intrinsic or permanent value, and is simply a means of communication.

In Lawyers' Ass'n, supra, the Court, in so far as we are concerned, merely announced rules of statutory construction, in-

cluding those that tax exemption statutes will generally be construed against the ones who claim the exemption, and that the object and manifest purpose of a statute is to be sought. In Patterson, supra (La. 1895), the plaintiff claimed under a constitutional exemption for the "manufacture of stationery"; it bought paper and converted it into bill heads, blank books, order blanks and commercial business forms, cutting, shaping and printing the paper. We first note the unusual form and limits of the exemption. The Court said that cotton and textile mills, furniture factories, etc. were manufacturers, but that one who merely added something to the material to permit a change of use was not such, and that folding or cutting was not manufacturing. The case seems to give some support to the appellant, but its value is substantially lessened in view of the narrow scope of the exemption. In the case of State v. Gardner & Jacob Co., Inc., supra, the taxpayer was a processor of hams. It bought the fresh hams, soaked, cured and cooked them and sold the finished products. The statutes exempted manufacturers who sold products exclusively to dealers for resale. The Court held that this process was not manufacturing, but it also noted in the course of the opinion that commercial printers were not manufacturers, citing Patterson, supra. That question was not before the Court. And see the Louisiana case of State v. Soard's Directory Co., La. Sup.Ct.1921, 148 La. 1013, 88 So. 251 (subsequent to Patterson), where it was suggested that the printer of a city directory was a manufacturer.

Sutherland, supra, is cited for the rule that in tax laws words are to be given their common and ordinary meaning, but when technical fields are involved, reference is necessary to scientific facts, the commercial background of the statute, the trade meaning of words and commercial usage. In our view the foregoing authorities certainly do not clearly establish that commercial printing is not manufacturing, although Patterson, probably not now effective, may seem to so indicate.

In the following cases cited by the Respondent it was held, in substance, that job printing or commercial printing, on order, and the production of business forms, books, blank books, pamphlets, advertising, calendars, bill heads, periodicals, etc. is "manufacturing" within the meaning of the statutes exempting that class from some form of taxation. State (Jersey City Printing Co., Prosecutor) v. State Board of Assessors, 47 N.J.L. 36 (as to one of the claimants); Press Printing Co. v. State Board of Assessors, 51 N.J.L. 75, 16 A. 173; Assessors of Boston v. Commissioner of Corporations and Taxation et al., 323 Mass. 730, 84 N.E.2d 129; Commonwealth v. J. B. Lippincott Co., 156 Pa. 513, 27 A. 10; State Tax Commission v. Standard Oil Co. of New Jersey, 181 Md. 637, 31 A.2d 621; Commissioner of Corporations and Taxation et al. v. Assessors of Boston, 321 Mass. 90, 71 N.E.2d 874; American Newspapers, Inc. v. McCardell, 174 Md. 56, 197 A. 574; Commonwealth v. D. B. Caufield Co., Ltd., 7 Dauplin Co.Rep. 195; Commonwealth v. Wm. Mann Co., 150 Pa. 64, 24 A. 601; State v. Soard's Directory Co., 148 La. 1013, 88 So. 251; People ex rel. Stokes v. Roberts, 90 Hun 533, 36 N.Y.S. 73. Other cases cited are more or less applicable by analogy. Some courts regard "manufacturing" and "processing" as substantially equivalent. Moore et al. v. Farmers Mutual Mfg. & Ginning Co. et al., 51 Ariz. 378, 77 P.2d 209; Bald Mountain Mining Co. v. Welsh, State Director of Taxation, 65 S.D. 117, 271 N.W. 819. Generally speaking, and as already indicated, the majority of cases hold that the publication and circulation of a newspaper is not "manufacturing." City of Lexington v. Lexington Leader Co., 193 Ky. 107, 235 S.W. 31; State (Jersey City Printing Co., Prosecutor) v. State Board of Assessors, 47 N.J.L. 36; Press Printing Co. v. State Board of Assessors, 51 N.J.L. 75, 16 A. 173; American Newspapers, Inc. v. McCardell, 174 Md. 56, 197 A. 574. To the contrary see: State v. Dupre, 42 La.Ann. 561, 7 So. 727; Advertiser Publishing Co. v. Fase (C.A. 9), 279 F.2d 636. However, we are not concerned with that issue.

Our question was considered among many others in the annotation appearing in 17 A.L.R.3d, beginning at p. 7. After stating certain principles and definitions, the author notes that in various cases the "process" of printing books, magazines, pamphlets "and the like" has been held to constitute manufacturing for the purpose of taxing statutes (citing cases). It is rather clearly indicated that the majority of the cases so hold.

After considering all the available authorities, we have concluded that the business of the purchasers of the printing presses involved here was "manufacturing" within the meaning of subsections (3) and (4) of § 144.030, subd. 3. It is not argued that the printing presses did not either replace other equipment by reason of design or product changes (3), or expand existing plants (4). One purpose of the statute clearly was to promote manufacturing business in the State of Missouri by exempting manufacturers from sales taxes on the equipment which they purchased; this was done, presumably, in view of the fact that sales taxes would be paid on all of their finished products when sold. We are not particularly concerned with the argument of Respondent that the statute was intended to prevent "double taxation"; that purpose was expressly stated in § 144.030, subd. 2. Under subsections (3) and (4) in which we are interested, the taxes on the original equipment or machinery and the finished products would be paid by different purchasers. The question is not really material.

The printers here did produce new and different articles from raw materials by the use of machinery, labor and skill, and they produced products for sale which had an intrinsic and merchantable value, and were in forms suitable for new uses. The "plain and rational meaning" of the words of the statute, in the circumstances of this case, support our ruling, and it is also consonant with the obvious purpose of the exemption. Our ruling is certainly not contrary to any Missouri case which we have seen; and the case of Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W.2d 911, tends to support it. The argument that this would exempt "expensive items of tangible personal property" is of no legal substance; and the further argument that the exemption was intended for the maker of the paper is not persuasive, for there may be more than one manufacturer in the production processes of many products. We have not thought it necessary to consider those statutes or regulations which expressly classify job printing as manufacturing, although there seem to be some.

If the legislature chooses to define "manufacturing" more specifically, it may do so. On this record, the judgment of the Circuit Court is affirmed.

It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.