**STATE ex rel. AMF INCORPORATED, Relator-Appellant,**

**v.**

**James R. SPRADLING, Director of Revenue, State of Missouri, Respondent.**

**No. 58594.**

Supreme Court of Missouri, Division No. 1.

Dec. 16, 1974.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 13, 1975.

Thompson & Mitchell, William G. Guerri, W. David Wells, St. Louis, for relator-appellant, AMF Incorporated.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from judgment that rentals from relator's machinery and equipment used in recapping and retreading of tires are not exempt from Missouri Sales Tax under the exemption provided by Section 144.030.-3(4), RSMo.1969, V.A.M.S.

Section 144.030.3(4), supra, provides an exemption from sales tax for "Machinery and equipment purchased and used to establish new or to expand existing manufacturing, mining, or fabricating plants * * * if such machinery is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption." The exemption, where applicable, applies also to "leased" as well as to "purchased" machinery and equipment. Section 144.020.1(8), RSMo.1969, V.A.M.S.

A substantial part of the business of AMF Incorporated is the manufacture of machinery for sale and lease. The Orbitread machine is a development of AMF's Tire Equipment Division and is used in the tire recapping and retreading industry. The Orbitread machine is leased by AMF to lessees under contracts which provide for monthly rental payments based upon a fixed charge per pound of rubber put through the machine.

The retreaded tires are sold primarily to owners of motor vehicles for final use or consumption.

A sales tax is paid on the sale of the retreaded tire to the ultimate consumer. The lessee who produces tread rubber from the Orbitread machine is also liable for the United States excise tax imposed by Internal Revenue Code, Section 4071(a)(4).

AMF has been paying the Missouri Sales Tax attributable to Orbitread rentals under protest, contesting the legal application of the Missouri Sales Tax Law to rentals received under leases of Orbitread machines.

The Orbitread machine encompasses an electronically controlled process that receives compounded rubber in slab, strip, or pellet form which is not then suitable for use as tread rubber. The machine changes the physical characteristics of and converts the uncured rubber by an extrusion process into a die size tread rubber which is then applied by the machine to a tire casing to build a tread of any desired depth and contour.

The Orbitread process begins with the selection of a usable worn tire carcass. The selected carcass is subjected to a machine buffing operation in which the old tread design and upper sidewall are ground off. A layer of the old tread material is left on the carcass. After the carcass has been buffed, it is coated with a thin layer of rubber base cement. At this point, the treated carcass is known as a "tire casing." The buffed and cemented tire casing that is about to be retreaded is placed on the freely rotating mandrel or spindle of the Orbitread machine and it starts to rotate. The operator of the Orbitread machine feeds uncured rubber into the machine and selects the proper data processing card corresponding to the desired specifications of the retreaded tire. From that point the machine is activated by the data processing card and the uncured rubber, by an extrusion process, is converted into tread rubber of the required die size. The narrow strip of tread rubber which begins to emerge from the machine is attached to the rim of the tire casing and the machine proceeds to lay a continuous ribbon of tread rubber around the tire casing in the proper thickness and profile, the machine automatically compensating for uneven spots.

Multiple stitching rollers carefully stitch down the leading and trailing edges of each strip so that it cannot move its position once applied, thus providing a uniform dense tread. When the completed tread has been applied by one or two passes across the buffed surface, the machine stops automatically. The freshly retreaded tire is then removed and cured in a mold, which also forms a tread design on the tire.

The freshly retreaded tire in the mold is subjected to pressure and heat to 400° Fahrenheit. As a result, further chemical reactions occur through the process known as vulcanization during which a molecular cross-linkage occurs in which the materials are bonded together chemically. This bond is brought about by the linkage of two items, sulphur and rubber, to form a new product with new physical characteristics. In addition, the metal mold is equipped with a tread design which is embossed on the retreaded tire. Upon completion of the curing process in the mold, the tire is finally inspected and is then ready for use as a retreaded tire.

The tread rubber that is applied to the tire casing by the Orbitread process cannot be used to retread a tire again. The molecular structure and chemical characteristics of the rubber are so altered by the curing process in the Orbitread machine that the viscosity of the rubber needed in retreading cannot be restored.

Under conventional processes tread rubber manufacturers convert slab stock rubber by an extrusion process, similar to the process performed by the Orbitread machine, into the form of tread rubber (camelback) suitable for use in recapping or retreading tires. Various die sizes of camelback are then sold to retreaders. The retreader manually applies bands of tread rubber to cement-coated buffed tire casings. Lengths of tread rubber are cut from rolls and fitted on the casing. Adjacent strips on the casing are spliced together. The retreaded tire is then cured in a mold in much the same manner that the re-

treaded tire from the Orbitread machine is cured.

Under the conventional method, retreaders are required to maintain large inventories of various die sizes of tread rubber because of the great varieties of tires on the market and other factors. The operator of the Orbitread machine is not required to maintain any inventory of tread rubber. He carries only uncured rubber in strip, slab, or pellet form because the Orbitread machine will convert the uncured rubber into tread rubber and the size required can be obtained by selecting the proper data processing card.

A retreaded tire sells at retail at a price which is, on the average, about fifty percent of the price of a new tire. The average wholesale price of a retreaded tire is $8.50 and the average retail price is about $12.50. A customer may furnish his own tire carcass for retreading by the Orbitread process. The average price charged to such customer for retreading is about $12.50, same as the average retail price of a retreaded tire. A worn tire carcass has little or no economic value except for its use for retreading purposes.

The advertising brochure accompanying the Orbitread machinery is entitled "How to Apply a Better splice-free Tread," and characterizes the Orbitread process as "Better retreads at a lower cost."

Appellant contends the court erred in adjudging that rentals from leases of Orbitread machines are not exempt from Missouri Sales Tax, asserting that the Orbitread machines and process fall within the exemption of Section 144.030.3(4), supra, for machinery and equipment used directly in manufacturing a product intended to be sold ultimately for final use or consumption.

■ "Manufacturing" is not defined in the Missouri Sales Tax Law, and, as recognized by appellant, it has meanings which vary depending upon the circumstances of its use. Union Wire Rope Corp. v. Atchison, T. & S. F. Ry. Co., 66 F.2d 965 (8th Cir. 1933).

West Lake Quarry & Material Co. v. Schaffner, 451 S.W.2d 140, 143 (Mo.1970), cited City of Louisville v. Howard, 306 Ky. 687, 208 S.W.2d 522, 527 (1947), for its concept "of what constitutes manufacturing * * *, viz., that if a process takes something practically unsuitable for any common use and changes it so as to adapt it to such common use, then such a process may be legally considered as manufacturing within the meaning of the tax exemption statutes."

Heidelberg Central, Inc. v. Director, 476 S.W.2d 502, 506 (Mo.1972), determined that a process was "manufacturing" within the meaning of Section 144.030.3(4), where it "did produce new and different articles from raw materials by the use of machinery, labor and skill, and * * * produced products for sale which had an intrinsic and merchantable value, and were in forms suitable for new uses."

Appellant relies upon West Lake Quarry & Material Co. v. Schaffner, supra, to argue that its Orbitread process takes uncured rubber and worn tire casings, "practically unsuitable for any common use"; changes the shape and chemical composition of the rubber so that it will adhere to the tire casing; and applies it to the carcass in one continuous operation so as to retread a tire. Appellant then separates the uncured rubber conversion operation from the total retreading process and concludes that "This is clearly a case of manufacturing tread rubber." Appellant also relies on Heidelberg Central, Inc. v. Director, supra, to argue that its Orbitread process changes physical characteristics of and converts the uncured rubber to a tread rubber and applies it to a tire casing. "The worn tire carcass, of no economic value, is transformed into a usable retreaded tire"; and, ergo, production of "new and different articles from raw materials."

Although the rules of these two cases are sound, appellant's reliance on them is misplaced because the facts are inapposite.

In West Lake Quarry & Material Co. v. Schaffner, supra, West Lake removed stone from the ground in its natural condition, and broke and processed such rock into sizes suitable and salable for various purposes, from small sizes for roads to largest sizes for river levees, and by grinding it for agricultural lime. The machinery and equipment used in breaking and grinding the rock were properly exempted from sales tax under Section 144.030.3(4), supra, as used in manufacturing, because the operation took something, natural stone, practically unsuitable for common use, and changed it to new and commonly usable broken and crushed rock and agricultural lime. Such operations have been recognized elsewhere as manufacturing. See 17 A.L.R.3d 7, for cases on both sides of the question.

In Heidelberg Central, Inc. v. Director, supra, Heidelberg manufactured printing presses which it sold to commercial printers engaged in job printing of business forms, stationery, printed advertising, postcards, bulletins, and the like. Such operations were properly exempted from sales tax under Section 144.030.3(4) as manufacturing, because the printers, by use of the machinery, produced new and different salable articles, suitable for new and different uses, from raw materials. This type of operation is also recognized elsewhere as manufacturing. 17 A.L.R.3d 7, supra.

▆ In contrast, the circumstances of the use of appellant's Orbitread machinery and process are no more "manufacturing" than is conventional retreading. Both the Orbitread process and conventional processes are "retreading"; and retreading is simply the repair of a tire by furnishing it with a new tread by cementing, molding, and vulcanizing of an entire new tread upon the bare cord fabric of a worn tire after buffing off the remains of the old tread. Webster's Third New International Dictionary. Both the Orbitread and conventional retread processes take worn tire carcasses and make them usable as opposed to the manufacture or production of a new and different tire. Heidelberg Central, Inc. v. Director, supra. Both processes

take worn tire carcasses which were originally manufactured as to be suitable to common use, and repair and restore them to their originally intended common use, as opposed to taking something practically unsuitable for any common use and changing it so as to adapt it to such common use. West Lake Quarry & Material Co., Inc. v. Schaffner, supra.

Appellant argues also that its machinery and process are used directly in manufacturing a product which is intended to be sold ultimately for final use or consumption because in their process a substantial tranformation of original raw material occurs.

In the circumstances of the use of appellant's Orbitread machinery and process, there is no transformation of original raw material, nor is its machinery used directly in manufacturing a product which is intended to be sold ultimately for final use or consumptiom. If there is a transformation of raw material, such material is the new rubber fed into the machine and it is transformed only to a form in which it may be applied to a worn tire casing, and the worn tire casing thus retreaded (repaired) is the ultimately salable item. The transformed raw rubber is not shown to be of any salable value and it is not intended to be sold ultimately for final use or consumption.

Both parties have furnished a number of citations from foreign jurisdictions.

Respondent's position is supported by two cases.

Zook v. Perkins, 118 Colo. 464, 195 P.2d 962 (banc 1948), determined whether retreading a tire was "manufacturing" as to be exempt from sales tax, saying: "The word 'manufacture' has varying meanings dependent on the circumstances of its use. * * * for one to be a manufacturer he must produce a new article; that 'In order that one may be a maker, it is essential that he be the efficient cause of the coming into existence of something that did not before exist.' * * * 'Manufacture implies a change, but every change is not manufacture. * * * There must be transformation; a new and different article must emerge, "having a distinctive name, character, or use." ' * * * When the [retreading] operation is completed, no new product, article, substance or commodity has been produced; no new character or use has been developed; no new name is applied. The new tread has no identity or existence apart from the tire. The original tire has not become a component part of a new product; rather the camelback and other substances have become component parts of the tire. There has not been the manufacture of a new article, but the repair of an old one. Recapping is not manufacturing as that word is generally defined." 195 P.2d 1.c. 962–963.

Skinner v. United States, 8 F.Supp. 999 (S.D.Ohio 1934), determined that a retreaded tire is not "manufactured," saying: "* * * in order to retread the tires, plaintiff has to add rubber to the old carcasses * * * the retreaded tire is in effect a secondhand tire or, as stated, a 'makeshift' and must of necessity be sold for very much less on the market than a new tire would bring. * * * plaintiff is not a manufacturer or producer within the meaning of the statutes and regulations. He is * * * 'a repairman,' * * * and by the court is classified, as such." 8 F.Supp. 1.c. 1003, 1004.

Douglas Pierce, Inc. v. W. H. Forst, No. 5162, Circuit Court of Rockingham, Virginia, December 27, 1972, cited by appellant, held that conventional retreading was manufacturing for purposes of a sales tax exemption under a Virginia statute similar to Section 144.030.3(4), supra. That court relied on Commonwealth v. Goodyear Tire & Rubber Co., 88 Dauph. 301, 44 D & C 2d 466 (Pa.1967), in which there was an exemption granted by statute to "The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a forum, composition or character different from that in which it is acquired * * *." 44 D &

C. 2d l.c. 470. The court reached a holding that retreading is manufacturing, saying: "As so broadly defined, we believe that 'other operations' includes the activity of appellant in the instant case in taking the worn carcass of a tire and subjecting it to the enumerated steps which results in an end product of a usable retreaded tire." 44 D & C 2d l.c. 471.

Appellant's foreign citations do not persuade a different determination from that made by respondent because, as demonstrated in the circumstances of the use of relator's Orbitread machinery and process, the rules of West Lake Quarry & Material Co. v. Schaffner, and Heidelberg Central, Inc. v. Director, supra, are controlling.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the judges concur.