Matthias, J.
 

 The question presented is whether the trucks of the appellant were to be used directly in mining, and, therefore, the sales tax inapplicable under- and by virtue of the provisions of Section 5546-1, (Jen
 
 *235
 
 eral Code, which specifies exceptions from the tax imposed upon retail sales. The portion of such section essential here is as follows:
 

 “ ‘Retail sale’ and ‘sales at retail’ include all sales excepting those in which the purpose of the consumer is (a) to resell the thing transferred in the form in which the same is, or is to be, received by him; or (b) ■to incorporate the thing transferred as a material or a part, into tangible personal, property to be produced for sale by manufacturing, assembling, processing or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, mining including without limitation the extraction from the earth of all substances which are classed geologically as minerals * * *.”•
 

 The restrictive definition of the word “mining” contained in rule 40 adopted by the Department of Taxation, which specifies that “ ‘mining’ * * * shall end at that point outside the excavation where the raw material is completely, severed from the earth and is in such form as to be subject to transportation to another location,” would, of course, require a holding that the trucks in question were not to be used in the mining operation. It seems obvious, however, that such definition excludes essential factors of the mining operation as usually accepted and understood. It is in conflict with the legislative definition of a “mine” contained in Section 898-1, General Code, which is as follows :
 

 “ ‘Mine’ means an underground or surface excavation or development with or without shafts, slopes, drifts or tunnels for the extraction of coal, gypsum, asphalt, rock or other materials (excluding natural gas and petroleum) containing the same with hoisting or haulage equipment and appliances for the extraction of coal, gypsum, asphalt, rock or other materials containing the same; and shall embrace any and all of the
 
 *236
 
 land or property of the mining plant, and the surface and underground, that is used or contributes directly or indirectly to the mining properties, concentration or handling of coal, gypsum, asphalt, rock o.r other materials containing the same.”
 

 It is to be observed that this definition of a “mine” specifically includes ‘£ all of the land or property of the mining plant, and the surface and underground, that is used or contributes directly or indirectly to the mining properties, concentration or handling of coal * * * or other materials containing the same.” To lie consistent therewith, it follows that the term “mining” cannot properly be restricted to the mere severance of the raw material from the earth, but includes such movement and handling thereof on the surface as in this instance is essential for the production of coal.
 

 The term “mine” is defined as follows in 40 Corpus Juris, 735, Section 8:
 

 “ As ordinarily used the term £mine’ includes the bed or vein of ore into which the pit enters, so far as may be necessary to the working of the mine, and the whole series of shafts and subterranean passages and chambers connected with it, and also all parts of the property of the mining plant, on the surface or underground, which contributes, under one management, to the mining, and is not limited to mere subterranean excavations or workings.”
 

 This court has been called upon to determine whether certain employees who work on the surface near and about a coal mine, but do not enter it, and also drivers of trucks connected therewith, are properly classified as being engaged in the mining operation.
 
 State, ex rel. River Mining Co.,
 
 v.
 
 Industrial Commission,
 
 136 Ohio St., 221, 24 N. E. (2d), 947. In the case just cited, this court rejected the claim of the relator, the operator of a mine, who maintained that he was engaged in a mere trucking operation in which his truck drivers hauled coal “from tipple tp barge.” It should be kept
 
 *237
 
 in mind that the trucks of the appellant involved in the instant case were purchased to be and are in fact used to transport coal from the mine to the tipple and for no other purpose. Their use, therefore, is limited to .the production of coal. In the situation presented in the case above cited, and also the situation in the case now before us, the drivers of the trucks have been classified as engaged in mining operation. As previously indicated, that classification was held valid by this court. It would be strikingly inconsistent to hold that the drivers of such trucks were engaged in the mining operation, but that the very trucks operated by those drivers were not used in mining.
 

 The Board of Tax Appeals based its conclusion upon the decision of this court in the case of
 
 Saunders Mills, Inc.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 227, 39 N. E. (2d), 526. The trucks involved in that case were used to transport alfalfa grown on lands leased by the purchaser to a manufacturing plant some distance away, which also was owned by such purchaser. The holding of this court was that such trucks were used merely in the transportation of alfalfa hay from the farm to the dehydrating plant and were not engaged either in the cultivation or harvesting of the hay or in the process of manufacturing.
 

 The operation of a dehydrating plant in nowise is connected with the business of farming, and the raising of alfalfa has no direct connection with the operation of a dehydrating plant distantly removed therefrom. The distinction between the situation presented in that case and the instant case seems obvious.
 

 It follows that the decision of the Board of Tax Appeals should be and is reversed.
 

 Decision reversed.
 

 Weygandt, C. J., Hart, Zimmerman, Bell, Williams and Turner, JJ., concur.