Weygandt, C. J.
Fortunately the facts in these cases are not in dispute.
It is contended that the purchases of the motor vehicles are taxable under the provisions of Section 5546-1, General Code, which reads in part as follows:
" 'Retail sale’ and 'sales at retail’ include all sales excepting those in which the purpose of the consumer is * * * (b) * * * to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, mining * * * or floriculture * * *; or directly in making retail sales or directly in the rendition of a public utility service * *
Likewise involved are the following provisions of rule 46, promulgated by the Tax Commissioner:
"Sales of tangible personal property to public utilities, as above defined, to be incorporated into the production, transmission or distribution systems of gas, electric, telephone, or water utilities, or of street, suburban and interurban, railroad or railroad companies, and tools for the maintenance of such systems are not subject to the tax.”
Two of the appellant public utility companies are engaged in the business of supplying telephone service to the public in different sections of the state. The third company generates and distributes electric energy for public use principally in the northern part of the state.
*559 In the rendition of these public services, each company owns and operates automotive equipment consisting of a number of small trucks and several passenger cars. All are used exclusively in company operations. Most of the trucks are equipped with specially designed bodies and are described as combination work benches and tool boxes together with built-in bins containing a supply of repair parts. Each truck also carries a wire spool and ladders. The other automobiles are business coupes with the rear seats removed and that space tilled with equipment for making repairs. The same is true of the trunk space. The vehicles are used in every sort of work necessarily incident to maintaining continuity of service and making additional installations.
Are these vehicles used “directly in the rendition of a public utility service?”
The question is said to be one of first impression in this state.
The reasoning of the Board of Tax Appeals was in part as follows:
“If the items in question were vehicles, like a motor cycle or car used primarily to relay messages to subscribers whose service was then interrupted, this board could readily agree with the appellant’s viewpoint. These trucks and cars are not a part of their communicating system. Messages may be dispatched when they stand idly by. They are not a part of their lines of communication. They help to keep those lines in repair and able to transmit messages over them. They but carry employees, tools and supplies with which the transmission lines are kept in repair and are, therefore, used indirectly in the public utility service rendered. True, they are necessary and indispensable items in maintaining service such as the public and the *560 Public Utilities Commission demands. * * * but necessity and indispensability is not tbe test of except-ability from tbe sales tax.”
The Board of Tax Appeals relied on the decision of this court in the case of Tri-State Asphalt Corp. v. Glander, Tax Commr., 152 Ohio St., 497, 90 N. E. (2d), 366. Also cited are the cases of Fyr-Fyter Co. v. Glander, Tax Commr., 150 Ohio St., 118, 80 N. E. (2d), 776, and Mead Corp. v. Glander, Tax Commr., 153 Ohio St., 539, 93 N. E. (2d), 19.
In the syllabus in the Tri-State case, supra, this court held:
“Boom and bucket cranes- the sole function of which is the conveying of ingredients to a place of processing, and which have no part in the actual processing itself, are not used or consumed directly in the production of tangible personal property for sale by processing and, under Section 5546-1, General Code, their sales are not excepted from taxation.”
It is important to observe that that case involved a different provision of the statute relating to personal property used or consumed “directly in the production of tangible personal property for sale.” The same is true of the Fyr-Fyter and Mead cases, supra. It is true also of other cited cases such as Saunders Mills, Inc., v. Evatt, Tax Commr., 139 Ohio St., 227, 39 N. E. (2d), 526.
The instant cases do not involve the production of property. Instead it is the rendition of service.
Is this difference in the General Assembly’s language important? This court is of the opinion that the contrast is significant and may not be disregarded. It seems unnecessary to labor the point that “production of property” and “rendition of service” are not synonymous terms.
*561 But it is urged that in 1935 the word “directly” was inserted in both provisions by amendment and must be considered. This, of course, is true. However, it does not follow that the common use of this one word renders the remainder of the two terms synonymous. Illustrative of this is the obvious fact that production ordinarily may be pursued part of each day, week or year. In contrast, the rendition of service by these appellants must be continuous 24 hours a day, seven days a week and 52 weeks a year. It does not consist solely of furnishing poles, wires, switchboards and other equipment. A substantial part of the rendition of the service is keeping the entire system in continuous operation. This requires the immediate and direct use of the concededly indispensable automotive facilities here involved.
Even in the cases of France Co. v. Evatt, Tax Commr., 143 Ohio St., 455, 55 N. E. (2d), 652, and Dye Coal Co. v. Evatt, Tax Commr., 144 Ohio St., 233, 58 N. E. (2d), 653, this court held that certain vehicles were used directly in the production of property. The France case, supra, involved dump cars, locomotive engines, locomotive cranes, movable shovels, etc., used in transporting crushed stone products from a stone crushing and screening plant to yards adjacent thereto in preparation for the market. The Dye case, supra, involved automobile trucks used to haul coal from the excavation or pits, following its extraction from the earth, to a tipple where the coal was cleaned and graded for shipment. If those vehicles were used directly in the production of property, it a fortiori would seem that the vehicles in the instant cases are used directly in the rendition of service.
The appellee commissioner relies on the decision of this court in the case of Midwest Haulers, Inc., v. Glander, Tax Commr., 150 Ohio St., 402, and insists *562 that it is dispositive of the instant cases. That case, as do the instant cases, did involve the statutory provisions relating to the rendition of a public utility service. However, a careful study of the case discloses that it has no application here. In the first place, the three trucks there constituting part of the dispute were purchased at a time when the company was not even a public utility. Secondly, this court held that ‘ ‘ none of the items the sale and use of which were held taxable in the instant case was indispensable in rendering a public utility service.”
But it is insisted that these motor vehicles are not ■“incorporated” into the systems operated by the appellants, as required by rule 46, promulgated by the Tax Commissioner. This is correct, and it indicates the conflict between the rule and the statute. Inasmuch as administrative agencies are creatures of statute and possess only such rule-making power as is delegated to them, this conflicting part of the rule obviously must fall.
Hence, it is the view of this court that the decisions of the Board of Tax Appeals affirming the orders of the Tax Commissioner holding these sales taxable must be reversed.

Decisions reversed.

Middleton, Taft, Matthias, Hart, Zimmerman and Stewart, JJ., concur.