146 So.2d 87

**STATE of Alabama**

**v.**

**INGALLS IRON WORKS COMPANY.**

**6 Div. 529.**

Supreme Court of Alabama.

Oct. 25, 1962.

MacDonald Gallion, Atty. Gen., and Jas. R. Payne, Asst. Atty. Gen., for appellant.

Wm. Bew White, Jr., John H. Morrow, and White, Bradley, Arant, All & Rose, Birmingham, for appellee.

## PER CURIAM.

The State Department of Revenue entered an assessment in the manner provided by law against appellee for sales tax which the appellant contended was due the State for the sale of fabricated steel to Rust Engineering Company of fabricated steel.

United States Pipe and Foundry Company at the time of the sale was desirous of erecting on its premises, and for its use and benefit, a blast furnace that required for its operation certain type boilers capable of generating steam vitally necessary to the operation of a blast furnace.

The Foundry Company employed Rust Engineering Company to erect the boilers according to engineering specifications. These specifications included the fabricated steel that was the subject of the sales tax for which assessment was entered.

Appellee, Ingalls Iron Works Company, with due recognition of statutory procedural requirements, appealed the assessment to the Circuit Court of Jefferson County. The trial court, after hearing the evidence, held that the sales tax assessment was invalid. The assessment was vacated and set aside, and the Comptroller of the State of Alabama was ordered to refund to appellee the amount of the assessment and interest which appellee had paid pending the appeal. From this judgment of the circuit court, the State of Alabama appealed and now brings the matter to this court for review.

A factual issue is presented by uncontradicted evidence given by experts as witnesses for appellee. Is the structural steel used for the purpose and in the manner hereafter stated "building materials" within the purview of Title 51, § 752(j), Code of Alabama 1940, as amended, reading as follows:

"* * * Sales of building materials to contractors, builders, or landowners for resale or *use in the form of real estate* are retail sales in whatever quantity sold. * * *" (Emphasis supplied.)

Appellee disclaims the application of this statute and contends that the structural steel, the subject matter of this suit, in its use, comes within the terms of Title 51, § 755(p), Pocket Parts, Code of Alabama 1940, which exempts gross proceeds derived from the sale of certain tangible items. Subsection (p) reads as follows:

"(p) The gross proceeds of the sale of machines used in mining, quarrying, compounding, processing and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

We have carefully read the evidence of appellee, several of the witnesses being experts, and concur in the trial court's findings of fact. The appellant offered no witnesses. We quote the findings, pertinent at this point, as follows:

"(5) The aforesaid items of steel were designed primarily to support

and stabilize the boilers which constituted an integral part of the steam generating machine. The height and number of the boilers was determined by the amount of surface area necessary to generate the amount of steam required to operate a newly constructed blast furnace of United States Pipe and Foundry Company. The engineering design for the aforesaid boilers required, as is customary with most boilers, that the boilers be suspended or 'top supported.' The aforesaid items of steel provided in the main part this top suspension, each piece being individually marked and having a predetermined position in the over all steam generating machine. Without this top support the steam generating machine could not operate to produce the steam necessary for the operation of the blast furnace. The predominant function of the steam generating machine is to produce steam to power the blowers which produce the blast of air essential to the pig iron process and which gives the blast furnace its name.

"(6) Physically attached to and a part of the steam generating machine are coal hoppers. Blast furnace gas, a by-product of the iron making process, is the principal fuel powering the steam generating machine. It is necessary several times a day at irregular times and intervals as the need arises to augment this blast furnace gas with coal, the auxiliary fuel for the steam generating machine. On such occasion, the coal must be immediately available and the hoppers hold the coal for automatic introduction as auxiliary fuel. An individual piece of coal entering the hopper at any time is consumed as fuel within a 24 hour period. The coal hoppers are not coal storage bins. Coal is stored about the premises of United States Pipe and Foundry before being fed into the hoppers.

"(7) Automatic feeding of the coal in the hoppers requires that the coal not become wet and slack. Steel roofing which is physically attached to the steam generating machine is necessary to prevent such conditions from arising."

Appellant insists in an elaborate brief that the structural steel is building material within the purview of Title 51, § 752(j), Code of Alabama 1940, as amended, supra, and is not exempt under the provisions of Title 51, § 755(p), supra.

In support of his argument, counsel for appellant cites several Alabama cases, to several of which we make brief reference:

Lone Star Cement Corporation v. State Tax Commission, 234 Ala. 465, 175 So. 399. This case involved the status, under the Gross Sales Tax Act, adopted by the legislature of Alabama in 1937, of cement, which was thereafter used in the construction of highways, foundations, dams, etc. The court held that the tax applied. The item was building materials and not used in connection with exempt machines.

In Layne Central Company v. Curry, 243 Ala. 165, 8 So.2d 839, it appears the appellant purchased out of the state certain raw materials (not fabricated for a special purpose) to be used and was used by it in the construction of " * * * pump houses, well connections and pipe-lines to convey the water necessary to the compounding, processing and manufacturing of pulp and paper, and to the operation of the machines used in such compounding, processing and manufacturing, from wells to the site of the mill, * * *." where manufacturing operations took place. The court held that the use tax applied inasmuch as none of the purchases constituted a completed project. The court said the tax was " * * * upon the contractor as the user of the *raw material* which entered into the construction of those structures before they came into use as such." (Emphasis supplied.) Had these materials been prefabricated for special use they might have fallen within

the purview of State v. Wilputte Coke Oven Corporation et al., infra.

Burford-Toothaker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420. This case held that the sales tax did not apply to tractors sold and used to "snake" logs from the woods to a sawmill site for processing into lumber. The court pointed out that the tractors were adaptable for other uses. They were automotive vehicles and not exempt as machinery under § 755(p).

Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So. 254. The court held that the sale in carload lots and large quantities of cross and switch ties, bridge timbers, etc., to consumers, contractors and landowners were building materials and not exempt from the gross sales tax. No question was decided as to their exemption as machinery and attachments therefor. They became part of the freehold.

Counsel for appellee likewise has submitted a comprehensive and helpful brief. Appellee cites the case of State v. Wilputte Coke Oven Corporation et al., 251 Ala. 271, 37 So.2d 197 (1948), as supporting its position that the steel is exempt pursuant to § 755(p), supra. We think this case is decisive of the issue of exemption. The opinion in this case was authored by the late Justice Foster, who likewise was the author of the opinion in Layne Central Company v. Curry, supra.

The Wilputte case involves the exemption vel non under § 789(q), Title 51, Code of Alabama 1940 (use tax law), of some items that were fabricated specially for use in a coke oven. The wording of the exemption provision, for all intents and purposes, was the same as § 755(p), supra. This court held that they were exempt from the use tax.

A pertinent paragraph of this decision reads as follows:

"We held in the Layne Central case, supra, that the construction out of building material of what might be termed a machine to be used and which was later used for the production of tangible personal property is not within the exemption to a contractor so doing under subsection (q), supra, although the use of the machine when completed may be exempt from the use tax chargeable to the owner. One who uses building material purchased out of the State for the construction of an appliance is doubtless chargeable with the use tax on such material, although the one using or storing the completed appliance is exempt from it. See, the King-Boozer case (State of Alabama v. King & Boozer), 314 U.S. 1, 62 S. Ct. 43, 86 L.Ed. 3. But we do not think that this principle applies to the purchase out of the State of the essential parts of a machine fabricated for that purpose when the purchaser uses them in the State in assembling a machine whose use is exempt, or that he should be taxable in the use of such parts in making the assembly of them. The statutes, supra, seem to make a distinction between building material and the parts of such machines. The fabricated parts separately could not manufacture tangible personal property. But when the essential parts of a machine are assembled into an appliance which is designed and able to do so, and is suitable for no other purpose, not only is the assembled machine so to be used, but each of its assembled parts previously made for that purpose is also to be used to manufacture tangible personal property. Such parts, declares the statute, include those made for use on or in the operation of the machine, necessary to its operation and customarily so used. But under the express terms of section 787(e) 'building material' cannot be classed as an essential element of a completed machine whose use is exempt under section 789(q), supra. But a machine is such in theory if its essential parts are in the process of being put together, and

**166**

set into position for operation." (251 Ala. at page 274, 37 So.2d at page 200.)

We do not think that the anchoring of the steel involved in the case at issue to a concrete foundation that was embedded in the ground deprived the structural steel of its character as an essential attachment to the boilers which are exempt. As to the latter exemption, see Curry v. Alabama Power Company, 243 Ala. 53, 8 So.2d 521. The fact of anchorage would not conclusively identify the steel as building material. The same rule would apply to the steel attached to the coal hoppers.

By way of illustration: Structural steel anchored to a concrete foundation embedded in the ground and supporting an elevated steel water tank, would, in our judgment, be a necessary attachment to the proper functioning of the tank and would not lose its character and become building material because it is fastened to the ground to support the weight of the tank. The structural connection would make the steel a part of the tank or a necessary attachment thereto.

The fact that the steel was sold to Rust Engineering Company, the contractor who erected the structure for the owners, would not impair the steel's character as a necessary attachment to the proper functioning of the vertical boilers. When the steel was fabricated according to engineering specifications for this special purpose, it then became a potential part of the boilers. This potential character was verified when it was used within a reasonable time after fabrication for the uses as designed. State v. Wilputte Coke Oven Corporation et al., supra.

The sales tax event here challenged could not have attached until the steel was fabricated and delivered. Prior to that time, the negotiations were contractual for the fabrication and delivery of the steel. When this delivery was made, the steel had ceased to be in a raw state. In the Layne case, supra, a use tax on raw items brought to Alabama was involved. Their subsequent fabrication by the taxpayer for special purposes did not create an exemption.

The views herein expressed are in accord with the judgment of the trial court, and the same is affirmed.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, and COLEMAN, JJ., concur.