**WEST LAKE QUARRY & MATERIAL CO.,
Inc., et al., Respondents,**

v.

**James E. SCHAFFNER, Director, Missouri
Department of Revenue, Appellant.**

No. 54291.

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

Ben Uchitelle, St. Louis, Cullen Coil, Jefferson City, for respondents; Carson, Inglish, Monaco & Coil, Jefferson City, of counsel.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for appellant.

LAURANCE M. HYDE, Special Commissioner.

Appeal by State Director of Revenue from judgment in favor of respondents for refund of $36,040.96 collected from them under the sales tax law, which amount the court found was within the exemption of § 144.030, subd. 3(4). We have jurisdiction not only because of the amount involved but also because a state officer is a party and the construction of a revenue law is involved. § 3, Art. V, Constitution, V.A.M.S.

The issue involved is whether certain machinery and equipment of West Lake Quarry & Material Co., Inc. comes within the exemption provided by § 144.030, subd. 3(4) as follows:

"(4) Machinery and equipment purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery is used directly in manufacturing, mining or fabricating a product

which is intended to be sold ultimately for final use or consumption; * * *."

West Lake's contested operation is to remove stone from the ground and process it for sale by breaking it into various sizes salable for various purposes, from small sizes for roads to largest sizes for river levees, and by grinding it for agricultural lime. West Lake also operates asphalt and concrete operations which are conceded to be manufacturing and are not involved herein. The Director contends that this operation is neither mining nor manufacturing. West Lake's operation is described in an agreed statement of facts and testimony of its president in part as follows:

"The quarrying operation involves the removal of overburden (dirt and in some cases sand) to expose the rock, the removal of the rock from the ground by means of blasting by use of explosives, the removal of the rock so blasted from the quarry pit, crushing and sizing and selling such rock. * * * West Lake blasts rock from the ground by the use of explosives. The rock so removed from the ground remains in the quarry pit. The rock so blasted (after some of it has been reduced in size by the use of a so-called headache ball) is picked up from the quarry pit by a power shovel and placed in trucks which haul such rock a distance varying from 200 feet to a mile to a hopper into which the rock is dumped by and from the trucks. There is a 'feeder' under the hopper which conveys the rock to scalping screens. The screens, due to the size of their mesh and by shaking, eliminate the 'fines' (dirt, crushed rock, etc.), and then the rock goes into the Pioneer Jaw Crusher (the item here in question) which breaks the rock to certain sizes so that after the sizing, hereinafter described, it can be sold as a product for final use or consumption. The crusher is adjustable so that the rock may be sized to several desired dimensions.

"After the rock goes through the crusher it falls onto an apron feeder which, in turn delivers the rock to a conveyor belt which, in turn, delivers the rock to a series of screens for further sizing purposes and from these screens the rock drops into various bins provided for the different sizes of rock.

"The rock in certain of such bins is then ready for sale, the rock from others of the bins is conveyed to another crusher and is re-crushed and re-screened and such process is repeated until the various sizes desired are obtained after which all the rocks finally come to rest in the correct bins. From these bins the rock is hauled 200 feet to 1 mile by West Lake trucks either to a barge on the river nearby or to a stock pile on the quarry site; or the rock is picked up by a hauler directed by a purchaser to the job site, or is picked up from the West Lake stock pile by a purchaser's own truck."

Respondent's president testified:

"Q As I understand you, irrespective of whatever else, what anybody else may do, as far as West Lake Quarry and Material Company, Inc., is concerned, no portion of your rock is salable even for dike purposes, when it is blasted from the ledge and falls into the pit?

"A It is not. We can't sell it. We've got to—

"Q It has to have something done to it even if it's sold for dike purposes?

"A Right.

"Q If it's sold for something other than dike purposes it has to have more done to it?

"A Right.

"Q The final thing is the agricultural lime, where it has to have the most done to it?

"A Yes.

"Q It's between the dike and agricultural lime, in between there, you have all different sizes and shapes of rock?

"A Right."

The Director to support his contention that quarrying is not mining cites § 293.020, RSMo, V.A.M.S., providing:

"Unless indicated otherwise, this chapter applies to all mines in this state engaged in the mining or extraction of minerals for commercial purposes, except barite, marble, limestone, and sand and gravel, or the prospecting for or the production of petroleum or natural gas; but does apply insofar as shale is mined or extracted for the purpose of recovering oil."

█ This is part of Chapter 293 on Mining Regulations and we think it indicates legislative belief that the mining regulations would apply to these excepted operations if they were not specifically excluded. It is also to be noted that § 293.-010 defines "strip mine," the description of which therein is similar to the process of quarrying stone. It is said (58 C.J.S. Mines and Minerals § 3, p. 36): "The term 'mining' * * * is not now limited in its meaning to the method of excavation, and, as used in some connections, includes open workings or quarries." It is also said (58 C.J.S. Mines and Minerals § 2, p. 24): "The word 'mineral,' in its ordinary and common meaning, generally includes stone and rock deposits, whether obtained from a mine, as the word would seem to imply, or by open working, and whether containing metallic substances or substances entirely nonmetallic." See also 36 Am.Jur. 281–284, Mines and Minerals §§ 2–5; Union Drainage Dist. No. 6, etc. v. Manteno Limestone Co., 341 Ill.App. 353, 93 N.E.2d 500; Bailey v. Evatt, 142 Ohio St. 616, 53 N.E.2d 812; Ingle v. City of Fulton, Mo.App., 268 S.W.2d 600, 604. Therefore, we hold that respondent's operations in removing rock from the ground are within the term "mining" as used in § 144.030, subd. 3(4). Obviously, the purpose of exempting machinery and equipment used in manufacturing or mining products to be sold for final use or consumption is to encourage the development of such enterprises to produce products

in this state which are subject to sales tax when sold and thus build up the economy of this state. The more difficult question is to determine whether all of respondent's activities in removing the rock and preparing it for sale can be classed as mining. However, if part of respondent's operation is mining and part is manufacturing it makes no real difference in the result to be reached because the machinery and equipment used for either purpose is exempted by § 144.030, subd. 3(4).

Appellant cites Powhatan Mining Co. v. Peck, 160 Ohio St. 389, 116 N.E.2d 426, in which it was held that trucks used solely for hauling gob (incombustible slag, rock and slate) from its coal-cleaning plant and tipple, were not directly used in mining. A more similar situation to the one herein presented was considered by the Supreme Court of Ohio in Dye Coal Co. v. Evatt, 144 Ohio St. 233, 58 N.E.2d 653. There the coal company operated a strip mine removing overburden with power shovels, then severing the coal and loading it into trucks, also by power shovels. The trucks transported the coal from the strip pits over private roads and a public highway about four and one-half miles to the company's tipple and dumped it into a storage bin. The coal was then conveyed to a picking table where dirt, rock, slate and other impurities were removed, followed by a passage of the coal on shaker screens where it is graded according to size for shipment. The issue was whether the trucks, used exclusively for hauling the coal to the tipple were used directly in the production of personal property by mining and thus exempt from the Ohio sales tax. The Department of Taxation ruled "[M]ining * * * shall end at that point outside the excavation where the raw material is completely severed from the earth and is in such form as to be subject to transportation to another location." The court said this was too restrictive and ruled that when "such movement and handling thereof on the surface as in this instance is essential for the

production of coal" it was included as part of mining. We agree with this view and hold all respondent's equipment is exempt under § 144.030, subd. 3(4) which is used to remove and dispose of overburden, to mine and remove the rock, to break up the rock in the quarry for use for dikes and haul it out of the quarry, to haul the rest of the rock to the crusher for processing.

The processing of the rock after it is delivered from the quarry can reasonably be considered manufacturing within the meaning and purpose of § 144.030, subd. 3(4) in view of the many different uses for which the delivered rock is prepared. Both parties cite an annotation on this subject in 17 A.L.R.3d 7. There are cases both ways on the question of whether converting rocks, stones, or shells into desired size, shape or appearance is manufacturing. 17 A.L.R.3d 69. In Tulsa Machinery Co. v. Oklahoma Tax Commission, 208 Okl. 138, 253 P.2d 1067, the court in a situation similar to that presented here distinguished between machinery used in removing rock and machinery used "in changing the form of rocks by placing through various crushers, pulverizing and processing the rocks for commercial use." The court held the latter would be machinery used in manufacturing but the former machinery used in removing the rock would not be machinery used in manufacturing.

In Commonwealth, for use of Rockcastle County v. W. J. Sparks Co., 222 Ky. 606, 1 S.W.2d 1050, it was held machinery and equipment used in preparing and delivering rock for use as road material was manufacturing. The court said: "If this were a case where the rock was merely blasted from the quarry and then broken into sizes for convenience of delivery, a different question would be presented. Here the rock in its native state is first blasted. It is then broken into sizes small enough to be placed in the crusher. It is then crushed and assorted into different sizes, some of which are ordinary stones, while others are mere macadam chips. Neither in its original state, nor when first blasted, is the rock suitable for use. By the process in question its shape, size, and adaptability are essentially changed, and the native rock is converted into an article suitable for use as road material. In our opinion this is manufacturing * * *."

In City of Louisville v. Howard, 306 Ky. 687, 208 S.W.2d 522, 527, the court, holding an electrical company's substations and transformers which changed generated electricity so it could be used in homes and places of business constituted machinery used in manufacturing said: "[T]he best viewpoint which we might presently adopt on this subject of what constitutes manufacturing is this one, viz., that if a process takes something practically unsuitable for any common use and changes it so as to adapt it to such common use, then such a process may be legally considered as manufacturing within the meaning of the tax exemption statutes."

We, therefore, hold that the machinery and equipment used in processing and grinding the rock in various sizes for many different uses is exempt under § 144.030, subd. 3(4), as used in manufacturing. However, we consider the principle of the Powhatan case (116 N.E. 2d 426) applicable to respondent's caterpillar wheel loader which is used almost entirely to load customers' trucks from stock piles in which the product of the enterprise was deposited awaiting sales to customers. This machine was not used *directly* in either manufacturing or mining the product intended to be sold as required to be exempt under § 144.030, subd. 3(4). Therefore the sales tax of $1,671.00 paid on this wheel loader should be deducted from the amount ordered refunded and it is ordered that the judgment be modified to do so.

The judgment as modified is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.