**STATE ex rel. DRAVO CORPORATION and Pilot Knob Pellet Company, Appellants,**

**v.**

**James R. SPRADLING, Director of the Department of Revenue, State of Missouri, Respondent.**

**No. 58517.**

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1974.

Greensfelder, Hemker, Wiese, Gale & Chappelow, Mark R. Gale, F. Roger Hemker, St. Louis, Carson, Inglish, Monaco & Coil, Jefferson City, for appellants.

John C. Danforth, Atty. Gen., Mark D. Mittleman, Robert Presson, Asst. Atty. Gen., Jefferson City, for respondent.

HENRY I. EAGER, Special Commissioner.

This proceeding involves the assessment of "sales and/or use taxes" on machinery and equipment purchased, assembled and installed by Dravo Corporation in a new iron ore pelletizing plant owned and to be operated by Pilot Knob Pellet Company near Pilot Knob, Missouri. The amounts of taxes so assessed, in two assessments, were $98,840.37, of which $93,131.94 is in issue here. The principal issue calls for a construction of § 144.030, subd. 3(4), RSMo 1969, V.A.M.S.[1], which provides for certain exemptions from the tax. We have jurisdiction because the case involves a construction of the revenue laws.

The facts are stipulated. On or about June 1, 1966, Dravo entered into two contracts with the Pellet Company, one for the construction of the plant buildings themselves (not involved here) and the other for the furnishing of "all material, labor and equipment" called for in a personal property contract and necessary "for the establishment" of the new facility. Dravo purchased, assembled and installed all such machinery and equipment during 1967 and 1968. The total contract price for this was $3,294,679; it is conceded that $190,281 of that amount was for personal property not used directly in manufacturing, mining or fabricating" (which is the basis of the exemption). This latter element reduced the present claim for refund from $98,840.37 to $93,131.94. Under the contract the Pellet Company assumed responsibility for "any sales and use taxes due * * *." This was a new "manu-

1. References herein to statutes will refer to that edition.

facturing, mining and fabricating plant consisting of a mine, a concentrator and pelletizer for the recovery and processing of iron ore." Its capacity was one million tons a year. The final product consists of concentrated iron ore pellets, all of which were and are sold by the Pellet Company to Granite City Steel Company. It is stipulated that the machinery and equipment so furnished "was used to establish Pellet Company's said new * * * plant." A copy of the contract is attached to the petition filed in the Circuit Court, but its details are immaterial to our issue. The Pellet Company mines iron ore, grinds it, screens it, separates the foreign materials, and forms the concentrated material into hardened and superheated pellets. Dravo furnished and installed the machinery and equipment for doing all this work and turned over a completed plant. That machinery and equipment is the subject of the present tax.

Dravo paid the assessments under protest, and filed its claim for refund. This was denied by the Director of Revenue on March 24, 1972. On April 18, 1972, Dravo and Pellet Company filed in the Circuit Court of Cole County, in three counts, their Application for a Writ of Mandamus, Petition for Review, and Petition for Declaratory Judgment. An Alternative Writ of Mandamus was issued. The Director duly filed his return to the Alternative Writ and his answers, which, in substance, raised only the legal issues now involved. After a hearing, the Court quashed the Alternative Writ of Mandamus, affirmed the "Decision and Order" of the Director of Revenue and held that the property in question was subject to the Sales and Use Tax. In so doing it made findings substantially the same as the facts already related. The assessments were made against Dravo, and not the Pellet Company. In its conclusions of law, the Court held that the personal property in question was "used and consumed" by Dravo in the performance of its contract and that it was not, therefore, exempt from the tax, and it likened the situation to that of a contractor

in an ordinary construction contract (City of St. Louis v. Smith, 342 Mo. 317, 114 S. W.2d 1017 (1937)). An appeal was taken before the judgment became final. Rule 81.05, V.A.M.R.

■ We comment briefly on the various forms of relief sought here. A petition for review was an adequate remedy under § 536.100, since the Director admits that appellants had exhausted their administrative remedies, and this was clearly a "contested case." That procedure was recognized in Heidelberg Central, Inc. v. Director of Dept. of Revenue, 476 S.W.2d 502 (Mo.1972), and Southwestern Bell Telephone Company v. Morris, Director of Revenue, 345 S.W.2d 62 (Mo. banc 1961). The application for a writ of mandamus and the petition for declaratory judgment were really surplusage, but did no harm. We consider the matter as on petition for review.

The applicable part of the statute in question, § 144.030, subd. 3, (4), being part of that section providing exemptions from the sales tax, is as follows: "3. There are also specifically exempted from the provisions of sections 144.010 to 144.510 and 144.600 to 144.745 and from the computation of the tax levied, assessed or payable under sections 144.010 to 144.510 and 144.600 to 144.745: * * * (4) Machinery and equipment purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption; * * *." We note here that the exemption specified above applies not only to the sales tax but also to the use tax, §§ 144.600–144.745.

Appellants say that the requirements of the statute are: (1) that the personal property be of the class described, i. e., "machinery and equipment"; and (2) that it be used for the purpose described. The Director says that a further requirement is implied, namely, that the person claiming

the exemption be the one who uses the property for the purpose specified in the statute. Stated in another way, the Director admits that the ultimate use by Pellet Company was for a purpose provided by statute, but says that Dravo was subject to the tax because it used and consumed the property, not to fabricate or manufacture a product, but to fulfill its contract. The question really boils down to this: Does the fact that Pellet Company procured the machinery and equipment through a contract with Dravo, and not through direct purchase, nullify the exemption? It is stipulated that Pellet Company is, by the terms of its contract, ultimately liable for the tax, if applicable. It is also conceded that the property involved was "machinery and equipment," that (by the wording of the stipulation) it "was used to establish Pellet Company's said new * * * facility" in Missouri, and that it is used directly in "manufacturing, mining or fabricating." The evidence is conclusive that the end product was sold "for final use or consumption."

■ There are no Missouri cases really in point. The Director relies on City of St. Louis v. Smith, 114 S.W.2d 1017 (Mo. 1937). There the question was whether the City had to pay sales taxes on materials used in paving streets, constructing a sewer and a hospital. The jobs were let under contract and the prices were fixed. The tax involved was stated by the statute to be upon "retail sales," and a "retail sale" was defined as "any transfer * * * of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale * * *." The contractor agreed to furnish all labor and material, and it bought the materials. It was held that the contractor *used* and *consumed* the materials in creating the projects, which became and were something different from the materials themselves; that he did not resell them, and that he was liable for the tax. That decision did not involve an exemption provision, but merely a determination as to whether there was a retail sale and, if so,

who was liable for the tax as the user and consumer. No "machinery and equipment" were involved, only ordinary building or construction materials which essentially disappear into a job when used. The real holding seems to have been that on a purchase and use of such ordinary building materials, to be used in the construction of a building, sewer or similar project, the contractor is the user. The Director argues that this makes Dravo the user in our case. There are substantial distinctions. Our case does not involve the construction of a building or any similar project; the goods here were not ordinary building materials but a complex and wholly different type of personal property, already fabricated and needing only to be assembled and installed intact as a permanent part of the final project. But the chief difference is that this particular type of property was covered by the specific exemption which broadly specifies the "use," —i. e., to "establish new * * * manufacturing, mining or fabricating plants," and that there is no doubt that the machinery and equipment were actually applied to that use. Our statute does not refer to the *identity* of the user, but only to a use for the designated purpose. The determination of *who* made the "use" here is only introduced into the case because the Director insists that a question of identity is *implied*. The question on our facts is whether the *use* qualifies under the exemption statute upon its own wording. Giving to the word "use" its plain and ordinary meaning (Berry-Kofron Dental Laboratory v. Smith, 345 Mo. 922, 137 S.W.2d 452 (1940)) it is clear that the real use here was by the Pellet Company and that it does qualify; the "use" was not the assembly of the machinery, but its installation, inclusion and use in the completed plant. Dravo only had temporary possession for a specific purpose. In Berry-Kofron, supra, the City of St. Louis v. Smith case was distinguished, and it was held that where a dental laboratory made dentures on prescriptions from dentists and furnished them to dentists, the patients were the ultimate users and consumers. So here was the Pellet Company.

■ The Director cites the definition of "use" as it appears in § 144.605(10) of our Use Tax Statutes, namely: "The exercise of any right or power over tangible personal property incident to the ownership or control of that property, * * *" excepting storage or sale. Assuming that the section might be applicable, we find and hold that Dravo was not exercising any right or power incident to an independent ownership or control, but was merely acting as the contractee on behalf of and for the Pellet Company.

■ Respondent also urges that the word "establish," i. e., "used to establish" the new plant, means more than to "construct." He seems to say that it means the creation or establishment of a going concern, and that only the Pellet Company did that. It would seem to be a complete answer to this to note that the stipulation provides in one paragraph that the equipment so furnished "was used to establish Pellet Company's said new manufacturing, mining and fabricating facility," and in another, that " * * * Dravo furnished materials, labor and equipment called for in that contract for the establishment of Pellet Company's said new facility * * *." But the Director says that this does not specify that Dravo "established" the facility and that it is entirely consistent with the idea that Pellet Company "established" it, by putting it into operation, after the installation by Dravo. Despite that rather technical argument, we find that the complete and final construction of the facility and all its component parts was, in the common sense and practical interpretation of the term, the "establishment" of the plant within the legislative intent. And most certainly Dravo's function constituted an integral part of its establishment, whatever be the definition. We shall not quibble over the multitude of dictionary definitions cited pro and con. The exemption provided in our statute is directed to "machinery and equipment," which is used to establish and create an operating plant, and not to the final operating facility itself.

The distinction attempted is without substantial merit.

Appellants Dravo and Pellet Company rely strongly on the case of State v. Wilputte Coke Oven Corp., 251 Ala. 271, 37 So.2d 197 (1948), as reaffirmed in Alabama v. Ingalls Iron Works Co., 274 Ala. 162, 146 So.2d 87 (1962). We discuss the case briefly. The statute there exempted from taxation "machines used in * * * processing and manufacturing of tangible personal property" and also included "parts * * * necessary to the operation of such machines * * *." The taxpayer (contractor) had contracted to furnish all labor and material necessary for the construction of a coke oven, and it did so. It purchased machines and parts outstate and brought them in for assembly and installation. The contractor was assessed for a use tax, primarily on the grounds that in assembling the machines from parts he had used them in Alabama (before any actual operations began) and that the exemption was only available to the final owner who used the equipment for the required purpose. In overturning the assessment the Court held, in part, that the exemption was of a *"machine"* and had "no relation to its ownership or who uses it"; also, that the taxpayer did not use or consume the completed machine, and that if the machine was of the type so required, the assembly of the necessary parts was not such a use or consumption of property as was taxable under the statute. We note the following from the opinion: (1) that the assembly of fabricated parts into a machine to be used for the statutory purposes and the installation thereof, is not a taxable *use* in the state; and (2) that an exemption of "machinery" as such does not carry a further requirement that only the ultimate owner and user is exempt. The opinion is perhaps not as clear and decisive as it might be and there are some slight differences between our statute and that of Alabama, but the case is of some persuasive effect here.

In John McShain, Inc. v. Comptroller, 202 Md. 68, 95 A.2d 473 (1953), a statute

exempted " 'Sales *to any person operating* a nonprofit religious, charitable, scientific, literary or educational institution * * * when * * * purchased for use in carrying on the work of such institution or organization.' " (Italics ours.) It was held that the exemption of materials and supplies purchased by a contractor and incorporated into a building constructed for the "National Institute of Health" was not to be lost because of the use of the contractor as an intermediary. The Court said that to hold otherwise would be a strained construction.

■■ The decision here depends entirely upon a construction of our statute. It is said that, although a taxing statute is construed strictly against the state, an exemption statute is strictly construed against the one claiming the exemption. Mississippi River Fuel Corp. v. Smith, 350 Mo. 1, 164 S.W.2d 370 (1942); Tiger v. State Tax Commission, 277 S.W.2d 561 (Mo.1955); American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12 (1944). However, this does not mean that this statute, or any statute, is to be given a construction which would cause an unreasonable or absurd result. John McShain, Inc. v. Comptroller, 202 Md. 68, 95 A.2d 473 (1953); Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832 (banc 1953); Maryland Casualty Co. v. General Electric Co., 418 S.W.2d 115 (Mo. banc 1967); St. Louis Southwestern Ry. Co. v. Loeb, 318 S.W.2d 246 (Mo. banc 1958). The primary rule is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to take the words used in the statute in their plain and ordinary meaning. State ex rel. Cooper v. Cloyd, 461 S. W.2d 833 (Mo. banc 1971); Missouri Pacific RR Co. v. Kuehle, 482 S.W.2d 505 (Mo.1972); State v. Brady, 472 S.W.2d 356 (Mo.1971); State ex rel. State Highway Commission v. Wiggins, 454 S.W.2d 899 (Mo. banc 1970); State ex rel. MFA Mutual Ins. Co. v. Rooney, 406 S.W.2d 1 (Mo. banc 1966). The purpose and object

of the legislation must always be considered. Edwards v. St. Louis County, 429 S.W.2d 718 (Mo. banc 1968); Stewart v. Johnson, 398 S.W.2d 850 (Mo.1966). And that principle has been applied in the consideration of this particular statute. Heidelberg Central, Inc. v. Director of Dept. of Revenue, 476 S.W.2d 502 (Mo.1972); West Lake Quarry & Material Co. v. Schaffner, 451 S.W.2d 140 (Mo.1970). In the latter case the Court said loc. cit. 142: "Obviously, the purpose of exempting machinery and equipment used in manufacturing or mining products to be sold for final use or consumption is to encourage the development of such enterprises to produce products in this state which are subject to sales tax when sold and thus build up the economy of this state." The statute exempts the *"machinery and equipment"* itself, not any particular person. We would not be justified in adding a requirement by implication, as Respondent suggests: " * * * that the person claiming the exemption be the one who uses the property for the particular purpose specified." The statute does not state, nor reasonably imply, such a requirement. In those cases where the legislature considered the identity of the purchasing or using party to be material it inserted such a provision, as in sales to religious and charitable institutions, § 144.040. If more were necessary here, the Pellet Company is ultimately liable for the tax in any event under its contract.

It would be unreasonable, and we might say absurd, to circumvent the obvious purpose of this exemption and deny its effect, merely because Pellet Company chose to acquire and use the machinery and equipment through a contractor instead of making the purchase itself under a different form of contract and having the contractor install it. Such a distinction would be giving effect to form rather than substance. The Director admits that, under his contention, an exemption would only require "different procedures." The ultimate burden of such a tax (as an added cost)

would fall upon the manufacturers, no matter what the form of the contract might be. The controlling factor is the required use of the machinery in Missouri for the purposes stated, and not the identity of the instrumentality which does the actual purchasing.

When the Court in Heidelberg, supra, said that one purpose of the statute was to promote manufacturing in the State of Missouri by "exempting manufacturers" it was speaking broadly of the statute's ultimate purpose and effect. The present distinction involving the use of a contractor or agent was in no way involved, and that opinion should not be construed as contra to our holding here.

We hold that the machinery and equipment in question were exempt from sales and use taxation, that Dravo was improperly assessed therefor in both assessments (except for the minor portion which Dravo concedes) and that the amount sought by appellants, $93,131.94, should be refunded. Appellants have not asked for interest, nor do we, in any event, determine whether it would be payable. The petition for judicial review constituted the pursuit of an adequate remedy. The judgment of the Circuit Court is reversed with directions to enter a new judgment reversing and setting aside the Decision and Order of the Director of Revenue and ordering the appropriate refund. Since the Application for a Writ of Mandamus and the Petition for Declaratory Judgment were superfluous, the Alternative Writ of Mandamus may be quashed and the Petition for Declaratory Judgment dismissed.

It is so ordered.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.