**ROTARY DRILLING SUPPLY, INC., a Missouri corporation, Petitioner-Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Defendant-Respondent.**

No. 64651.

Supreme Court of Missouri, En Banc.

Dec. 20, 1983.

George E. Schaaf, Leigh H. Greenhaw, Clayton, for petitioner-appellant.

Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

WILLIAM E. TURNAGE, Special Judge.

In July of 1980, the Director of Revenue issued an assessment in the amount of $104,928.90 to Rotary Drilling Supply, Inc. for unpaid sales/use and conservation taxes for the period of March 1, 1978 to February 29, 1980. Rotary appealed the assessment to the Administrative Hearing Commission and, after conducting a hearing, the Commission entered findings of fact and conclusions of law which upheld the assessment.

On this appeal,[1] Rotary contends that its sales of drilling rigs were exempt from sales tax under § 144.030.3(4) RSMo 1978.[2] Affirmed, but remanded for further evidence on the use of certain drills.

Rotary sold 23 Schramm drilling rigs at retail in Missouri during the period in question. The 23 rigs were sold to 20 individual purchasers who use them on a contract basis to drill holes for a variety of purposes. The drilling rigs, manufactured in Pennsylvania, are designed to drill holes into the ground to depths ranging from 1,000 feet to 3,000 feet and usually from 8 to 12 inches in diameter. At the factory the rigs are mounted on specially built motor chassis which enable them to be rather easily moved between locations.

The rigs are primarily off-road drilling equipment and the chassis is not normally titled as a motor vehicle, although on occasion a mortgagee may insist that a title be issued. On practically all sales of the rigs, Rotary paid sales tax on a value assigned to the chassis. However, that value was small compared with the value of the total rig. The sale price of the rigs ranged from about $64,000 to $195,000. The chassis was valued generally in the $4,000 to $8,000 range and sales tax was paid on that amount. The department claims unpaid tax on the difference between the chassis value and the retail price of the rig.

Rotary claimed in the hearing before the Commission that its sales of rigs were tax exempt under § 144.030.3(4). In its report, the Commission made the following findings of fact from the evidence before it: that an officer of Rotary witnessed the rigs being used in Missouri to drill (1) mining test holes for barite, lead, zinc, and copper, and (2) residential, city, irrigation, industrial, and commercial water wells. Also it found that the rigs were used to drill for gas and oil in Oklahoma. Although the record contains evidence that rigs were used to drill blasting holes in quarries, the Commission failed to make findings of fact concerning the use of rigs in that capacity.

The Commission concluded first, that the mobility of the rigs was significant because some rigs were used out of state and were therefore not exempt. Secondly, the Commission stated that the rigs were capable of drilling for a variety of resources and in order for a rig to be exempt, the mining plant it establishes must produce a product that is intended to be sold at retail. Thus, it concluded that drilling an irrigation well, since it does not result in the production of a product that is ultimately intended to be sold, does not constitute the establishment of a mining plant. The Commission emphasized that when a property is capable of multiple uses only some of which are exempt, the taxpayer bears the burden of producing evidence of exempt use. Rotary, the Commission held, failed to carry its burden of proving that its customers purchased rigs for expanding or establishing mining plants in this state. Finally, the Commission sustained the assessment with the exception that the parties had agreed that part of the assessment on the sale of rigs to Langston and Hall Drilling Company and part of the assessment on the sale of a rig to R.L. Clark Company should be excluded. There is no indication as to the amount to be excluded.

---

1. Jurisdiction is in this court because construction of the revenue laws is involved. Mo. Const. Art. V, § 3.

2. All sectional references are to Missouri's Revised Statutes, 1978, unless otherwise noted.

Section 144.030.3(4) was re-enacted without any change in its language as § 144.030.2(5) RSMo Supp.1981 by H.B. 726 on July 31, 1979, effective January 1, 1980.

The standard appropriate to this court's review of the Commission's decision is stated in § 161.338. The decision of the Administrative Hearing Commission "shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record . . . and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency." See *Overland Steel, Inc. v. Director of Revenue*, 647 S.W.2d 535 (Mo. banc 1983). The Commission's findings with regard to use of the rigs in water well drilling will be discussed first, followed by a review of its general conclusion that Rotary failed to carry its burden of proving exempt use. The Commission's finding that the use of the rigs outside Missouri is not an exempt use was not contested and is affirmed.

The evidence introduced in the hearing revealed that the rigs were used predominantly for drilling water wells for residences, farms, water districts and cities. Thus, the Commission perceived the principal question before it to be whether or not the predominant use of the rigs in drilling water wells brings the sales of these rigs within the exemption provided by § 144.030.3(4). That section reads as follows:

Machinery and equipment, and the materials and supplies solely required for the installation or construction of such machinery and equipment, purchased and used to establish new or to expand existing manufacturing, mining or fabricating plants in the state if such machinery and equipment is used directly in manufacturing, mining or fabricating a product which is intended to be sold ultimately for final use or consumption;

Rotary contends that its sales of rigs used to drill water wells were exempt since the rigs were used to establish new or to expand existing mining plants in the state. Rotary failed, however, to retain exemption certificates from the purchasers of the rigs as required by § 144.210. This court held in *Overland Steel, Inc. v. Director of Revenue*, supra, at 538, that the burden of proving a sale of tangible personal property is not a sale subject to the sales/use and conservation tax is on the party making the sale. This court further stated in that case that the furnishing of the exemption certificate to a seller by a buyer constitutes a claim by the buyer that the sale is exempt from the tax.

Since Rotary did not obtain exemption certificates from its buyers, it sought to supply evidence to show the exemptions by entering into a stipulation with the department, and by introducing the testimony of an officer of Rotary and testimony of the purchaser of one rig. The stipulation provided that Rotary is a Missouri corporation with its principal place of business in Jefferson County, and that it had filed a timely appeal from the assessment made by the director. The stipulation further provided that Rotary is in the business of making retail sales of Schramm drilling rigs, and that Rotary did not require that its purchasers supply exemption certificates. The stipulation contained the names of the purchasers of each of the 23 rigs sold during the time involved, the amount paid for each rig, and in most cases that portion of the purchase price on which tax was paid. The stipulation stated that the rigs were purchased for the drilling of water wells, but that they can also be used for drilling in connection with zinc, copper, and lead mining, for drilling gas and oil wells, as well as for test drilling to determine the quantity and quality of mineral resources available in a given area. The drilling rigs in question are Schramm models T66H, T685H, T985HA, and T64HB.

The question of whether or not the drilling rigs used to drill water wells come under the mining exemption of § 144.030.3(4) is a question which has not arisen in Missouri, nor in any other state on the language used in the Missouri exemption. Although this court is not aware of any similar case involving water wells, a useful analogy may be drawn between water wells

and oil and gas wells. Oil and gas, like water, are extracted by being pumped from subterranean depths through deep, cylindrical openings drilled in the earth. One of the few cases to address the question of whether a mining tax exemption was available for the drilling of oil and gas wells is *J.M. Guffey Petroleum Co. v. Murrel,* 127 La. 466, 53 So. 705 (1910). In *Guffey* the court quoted the definition of mining as given in the Century Dictionary. The court stated:

> A reading of the entire definition fixes indelibly upon the mind the idea that a "mine" is: First, a large opening into the ground like a pit or quarry; second, that only such openings are mines as are made for the purpose of getting metal, ores, or coal. We submit that the definition above quoted is an absolutely faithful and accurate statement of what constitutes a "mine" in the most usual signification of the word. 53 So. at 711.

*Guffey* held that oil and gas wells were not mines under the commonly understood definition of "mine."

There is no cause to believe that the commonly understood definition of "mine" has changed in the years since *Guffey.* It is stated generally in 58 C.J.S. *Mines and Minerals,* § 1, (1948), p. 16, that since oil and gas are minerals in the broader sense of the term, as used in some instruments and statutes oil and gas wells may be included in the term "mine." The source continues: "Ordinarily, however, an oil or gas well is not a mine in its primary and restricted sense." In 54 Am.Jr.2d *Mines and Minerals,* § 4, (1971), p. 188, it is said that "the word mine does not comprehend every possible excavation by which mineral matters are brought to the surface. While there is some authority for the proposition that an oil or gas well is a mine, it is more generally held that it is not."

■ To determine the meaning of mining plants as used in the exemption statute, the primary rule is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to take the words of the statute in their plain and ordinary meaning. *State ex rel. Dravo Corporation v. Spradling,* 515 S.W.2d 512, 517[5, 6] (Mo.1974). This court is convinced that the definition of "mine" in *Guffey* comports with the plain and ordinary meaning of that term. The Missouri legislature has consistently used the plain and ordinary meaning of "mine" as defined in *Guffey,* and consequently has refrained from referring to water wells as "mines." One indication that it did not intend to exempt water wells as mines under § 144.030.3(4) is that it has not systematically, nor even occasionally, used the term "mining" to include the drilling of water wells. This is borne out by the complete absence of any reference in Chapter 293, which contains mining regulations, to water wells. The statutes which concern water sources regularly refer to water in connection with wells rather than mines: *See* § 71.700 which gives the power to all cities to regulate, license, and collect a tax on all springs, wells, or other sources of water from which water is sold to the public; and § 577.076 which provides a penalty for littering any well, spring, brook, branch, creek, pond, or lake.

When used to drill water wells, the rigs in question drill holes from 8 to 12 inches in diameter. This court holds that such holes cannot come within the definition of "mine" stated in *Guffey,* which is hereby adopted. This court concludes that the drilling of a water well does not constitute the establishment of a new or the expansion of an existing mining plant. If any doubt remains, it is dispelled by the rule that an exemption is construed most strictly against the party claiming it. *State ex rel. Dravo Corporation,* supra, at 517. Rotary cites *Tyger & Karl Complete Water Systems Co., Inc. v. Commonwealth,* 5 Pa.Commonw.Ct. 154 (1972), which held that the drilling of water wells was tax exempt. In *Tyger* the court dealt with a statute which exempted the mining *or otherwise extracting from the earth* of any natural resource. Clearly, the Pennsylvania exemption is not confined to mining as is the Missouri statute, but

rather includes the extraction of any natural resource from the earth.[3]

Rotary contends that the purpose of § 144.030.3(4) is served by exempting rigs used to drill water wells, since the water from many of the wells is later sold and a tax paid on the sale. However, the first test of the exemption is that the machinery and equipment must be used to establish new or to expand existing mining plants. The part of the exemption which states that the product must be intended to be sold ultimately for final use or consumption is not triggered unless a new or expanded mining plant is first created. Since this court concludes that the drilling of a water well, regardless of the purpose for which the water may be used, does not constitute the establishment or expansion of a mining plant within the exemption statute, Rotary's argument fails and rigs used for drilling water wells are not exempt. The Commission found only that rigs used to drill water wells used for irrigation and for exploration of oil and gas out of state did not come within the exemption. For the reasons stated that finding is correct and is affirmed. The record reveals some rigs were used to drill municipal, residential, or commercial water wells. These rigs are not exempt, since drilling water wells for any purpose does not constitute "establishing a mining plant" within the meaning of § 144.030.3(4).

The record indicates that, while most of the rigs were used to drill for water, some rigs were used to drill test holes for barite, lead, zinc, and copper. It is understandable that the parties and the Commission concentrated on the water well use because, until this case, no decision had dealt with the question of whether or not

such use would come within the exemption. However, since one rig might be exempt by virtue of its use while others used for different purposes are not, it is necessary to look at each use to which Rotary claimed its rigs were devoted. It is not enough to conclude, as the Commission's report suggested, that Rotary failed to meet its burden of proving all 23 rigs were exempt because the predominant number of rigs were not put to an exempt use. Rather, the uses that the record indicates were made of each rig must be considered before determining whether that sale was exempt. First, regarding the rigs used to drill test holes, it is apparent that mere exploration for minerals is not equivalent to the mining of the same. "Prospecting, exploring and investigating are not mining," *Freemont Lumber Company v. Starrell Petroleum Co.,* 228 Or. 180, 364 P.2d 773, 779[5] (1961), since ... "[w]hen the term mine is used, it is generally understood that the excavation so named is in *actual course of* exploitation." *Freemont Lumber,* at 779, quoting *Guffey,* 53 So. 705, at 711. Thus, rigs used to explore for mineral deposits are not exempt.

The record also indicates that certain rigs were used to drill holes for blasting in quarries. Evidence concerning the use of the rigs in quarries was not developed because the Commission was of the view that it was immaterial. However, after the Commission reached its decision, Rotary requested that the hearing be reopened to give it the opportunity to produce evidence concerning the use of the rigs for drilling holes for blasting in quarries but this request was denied.[4] Rotary contends that it should

---

3. Rotary also relies on the argument that the court held in *Charlestone Stone Products Co., Inc. v. Andrus,* 553 F.2d 1209 (9th Cir.1977), that water is included within the term "mineral." That decision was reversed in *Andrus v. Charlestone Stone Products Co., Inc.,* 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978), in which the Supreme Court held that the fact that water is a "mineral" in the broadest sense of that term, or that it may be valuable or marketable, is not enough to support a mining claim's validity based on presence of water. Since *Andrus* was decided under the basic fed-

eral mining statute, 30 U.S.C. § 22, rather than under a statute resembling the Missouri exemption in issue, a discussion of the court's reasoning does not aid in an interpretation of the Missouri statute.

4. Consequently, the record contains only the statement that certain rigs were used in lead mining and quarrying operations. From that bare assertion it is impossible to determine whether or not such rigs could possibly come within the exemption being considered. In order for the claim that such rigs were used so as

have been allowed to present evidence at a reopened hearing because after it entered into a stipulation of facts with the state, the state, in effect, reneged on the stipulation. The state introduced additional evidence at the reopened hearing which was held prior to the time the Commission entered its findings. It is not necessary to decide the merits of Rotary's contention. However, this court finds, under the circumstances of this case, that Rotary should be allowed to produce further evidence to support its claim of exemption.[5] On remand, the Commission should note that this court held in *West Lake Quarry & Material Co. v. Schaffner,* 451 S.W.2d 140 (Mo.1970), that removing rock by an open quarry operation constituted mining within the exemption in question. The *West Lake* decision is in accord with the commonly held definition of mining stated in *Guffey.*

█ In summary, the Commission failed to distinguish between rigs used to drill water wells, and those used to drill holes that Rotary claims were for mining lead, copper, and zinc, and for quarrying. Thus, the Commission failed to make findings of fact on whether any rigs were used in mining or quarrying, and if so, whether such use came within the exemption. The Commission was mainly concerned with the requirement that the mining product be sold for final use or consumption. However, the first requirement of the statute as applied to this case is that the rigs be used in mining. Next, if mining is shown, the rigs must be used directly in the mining operation. If those two tests are met, the product of the mine must be sold for final use or consumption. As held above, use of the rigs to drill water wells for any purpose, or to drill exploratory holes, is not "mining" within the meaning of the exemption's first requirement.

This court affirms the holding of the Commission that the rigs used to drill irrigation wells and those used to drill test holes for oil and gas in other states are not tax exempt. This cause is remanded to the Commission, however, for the purpose of allowing Rotary to present additional evidence on the question of whether certain rigs were used in connection with various mining operations and in quarries, in order for the Commission to make findings of fact and to determine if such rigs qualify for exemption under § 144.030.3[4].

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in result in part and dissents in part in separate opinion filed.

BILLINGS, J., not sitting.

BLACKMAR, Justice, concurring in result in part and dissenting in part.

I read § 144.030.3(4), RSMo 1978 as requiring the purchaser to show that the machinery is to be used exclusively to establish or expand existing "manufacturing, mining or fabricating plants in this state." The apparent purpose is to encourage the erection of new plants in the State of Missouri which will produce property subject to sales tax, in the conviction that both the revenue and the general level of prosperity will thereby be aided. When this purpose is considered, I doubt that it is appropriate to construe the exception narrowly. It is more reasonable to assume that the General Assembly intended to classify all new plants as "manufacturing, mining or fabricating." If so, a narrow construction of "mining" would work against the intended purpose.[1]

to come within the mining exemption to be fully developed and the facts ascertained by the Commission, this cause must be remanded.

5. While it is true that the exemption must be determined at the time of sale, the record only indicates a claim that certain rigs were used in drilling holes for blasting in quarries, or for drilling in connection with lead, zinc or copper

mining. There is no evidence in the record from which this court may make that determination. Thus, it will be up to the Commission, in the first instance, to determine the facts.

1. The cases construing § 144.030.3(4) have not adopted a narrow construction. *See West Lake Quarry & Material Co. v. Schaffner,* 451 S.W.2d 140 (Mo.1970)—removing rock from

Express qualifications, however, were added. The plants must be located in the state of Missouri, and must produce products which are intended to be resold. Unless these conditions are met, the exemption does not apply. The statutes, furthermore, make no provision for partial exemption. The sale is fully taxable or fully exempt at the time it is made. The seller is obliged to collect the tax, but the incidence is on the buyer.

What the evidence shows is that the rigs were sold to contractors who were in the business of digging holes, for whomsoever might hire them. The contractors were available to drill holes outside the state, or for individuals who proposed to extract water for use on their own land rather than for resale. It is doubtful that the buyer, at the time of the sale, knew just how the rig would be used. The appellant, then, has failed to establish that the sale of the rigs came within the exemption.

Nor is there any offer of proof or other indication that factual differences exist as between William A. Clark's use and the other rig purchasers' uses which would require a different holding as to the latter.

On this basis, then, the decision of the Administrative Hearing Commission should be affirmed. There is no need for a remand.

---

ground and crushing it constituted "mining"; *State ex rel. Ozark Lead Company v. Goldberg,* 610 S.W.2d 954 (Mo.1981)—purchase of machinery and equipment to expand existing operations was within the exception; *State ex rel.*

*Dravo Corporation v. Spradling,* 515 S.W.2d 512 (Mo.1974)—purchase by contractor rather than by owner exempt, if end use is within the exemption.